Anthony J. MELERINE, Jr.,
Plaintiff-Appellant,

Continental Insurance Company,
Intervenor-Appellant,

v.

AVONDALE SHIPYARDS, INC.,
Defendant-Appellee.

No. 80–3379.

United States Court of Appeals,
Fifth Circuit.*
Unit A

Oct. 23, 1981.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Samuel S. Dalton, Jefferson, La., Jack Peebles, Metairie, La., for Melerine.

Tyler S. Posey, Emery Voorhies, New Orleans, La., for Continental.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Robert M. Contois, Jr., New Orleans, La., for defendant-appellee.

Before RUBIN, RANDALL and TATE, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

In a negligence action, regulations promulgated under the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651–678 (1976) ("OSHA"), provide evidence of the standard of care exacted of employers, but they neither create an implied cause of action nor establish negligence per se. While they are evidence of a general standard of care due employees, they establish no standard of care due third persons. Therefore, in this negligence action, we reject the argument that the failure of a third party that was not the plaintiff's employer to follow OSHA regulations establishes that third party's negligence. Because we accept the trial judge's conclusions based on the other claims of negligence and because there are no other factual disputes, we affirm the judgment denying recovery.

The trial judge found these facts. Mission Viking ("MV") owned a cargo ship. It contracted with Avondale Shipyards to do part of the work necessary to convert the ship so that it could be used in drilling oil wells. It engaged other contractors to do other parts of the necessary work. Thus, it contracted directly with Technical Sea Services to outfit the vessel.

The ship's equipment included pedestal cranes. As part of its service to MV, Avondale furnished a qualified crane operator to make lifts for all work crews participating in the conversion whether employed by Avondale or by one of the other contractors that had contracted directly with MV. The established procedure was for the contractor who needed a lift to provide workers to hook the load and to direct its movement by signaling the crane operator.

Anthony Melerine, Jr., was employed by Technical as a welder and fitter. As part of Technical's work, it was necessary to move a heavy mooring bitt from one side of the ship to the other. Melerine's foreman, Ronald Macalusa, directed him to help Macalusa in moving the bitt. Macalusa asked the Avondale crane operator, Louis Easter, to lift and move the bitt with the crane. From Easter's station as crane operator, he could not see the bitt, so Melerine acted as signalman.

After Easter raised the crane boom, Melerine and Macalusa hooked the lifting line to the bitt, and Easter took up the slack on the line. Melerine and Macalusa then realized that, as the lifting line traveled across the ship while carrying the bitt, it would approach a scaffold that had been erected on the deck. Melerine then signaled Easter, the crane operator, to stop the lift, and Easter complied. On Macalusa's instructions, Melerine climbed the scaffold to guide the line away from it, if necessary, after the lift was resumed. Melerine then took a position in clear view of Easter, almost directly in front of him. Easter then, on Melerine's signal, began the lift.

Once the load was raised off the deck, Easter had a full view of it, except for a short time when it passed behind some boards. While the load was passing behind these boards, it caught on something. Melerine again signaled Easter to stop, and Easter did. Still standing on the scaffold, Melerine grasped the line and tried to pull the load free. When he succeeded in doing so, the line quivered and struck the scaffold, causing Melerine to fall backward and injure his back. Melerine sued Avondale for negligence.

■ Because Melerine was not a seaman but a ship repairman, 33 U.S.C. § 905(b), and because Avondale was neither the shipowner nor the employer of Melerine, the action is grounded on general maritime law; and the duty owed by Avondale to Melerine is the usual negligence duty of reasonable care under the circumstances. *See* 1 M. Norris, The Law of Maritime Personal Injuries § 2, at 4–5 (3d ed. 1975); *id.* § 63, at 117–18.[1]

Melerine contends that Avondale, through its employee, Easter, was negligent both in law and in fact. He bases his negligence in law argument on Easter's alleged violation of the following: (1) an OSHA regulation requiring that a tag line[2] be used in moving a load likely to require guidance, 29 C.F.R. § 1915.66(c) (1980);[3] (2) an OSHA regulation requiring the use of a qualified signalman in moving a load when the hoist operator cannot see the load, *id.* § 1915.66(k);[4] and (3) a professional organization's standard for crane operations, American National Standards Institute ("ANSI") Safety Standards for Cranes, Derricks, Hoists, Hooks, Jacks, and Slings (Standard B30.4) § 5–3.1.3(d) (1973).[5] He argues that Easter's alleged violation of these OSHA regulations and the ANSI standard constituted negligence per se.

Melerine bases his negligence in fact argument on two grounds. The first is that Easter was negligent in failing to use his "knowledge, authority, and responsibility" to prevent or prohibit what Melerine contends was an "inherently unsafe" lifting operation. The second, related to but more

1. *Cf. Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630–32, 79 S.Ct. 406, 409–10, 3 L.Ed.2d 550, 554–555 (1959) (shipowner's liability to nontrespasser on board ship); *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980) (shipowner's liability to another's dockside employee); *Branch v. Schumann*, 445 F.2d 175, 178 (5th Cir. 1971) (shipowner's liability to social invitee) (quoting *Kermarec*).

2. A tag line is a line attached to a load that can be used to direct the load's movement. The use of a tag line enables a person to stand on the deck and at a safe distance from the load while helping the crane operator in moving it. It thus minimizes the danger that the load will strike the person directing its movement.

3. Section 1915.66(c) provides: "Tag lines shall be provided on loads likely to swing or to need guidance."

4. Section 1915.66(k) provides:
 An individual who is familiar with the signal code in use shall be assigned to act as a signalman when the hoist operator cannot see the load being handled. Communications shall be made by means of clear and distinct visual or auditory signals except that verbal signals shall not be permitted.

5. Section 5–3.1.3(d) of ANSI standard B30.4 provides:
 The [crane] operator shall be responsible for those operations under his direct control. Whenever there is any doubt as to safety, the operator shall have the authority to stop and refuse to handle loads until safety has been assured.

specific than the first, is that Easter's alleged violation of the OSHA regulations and ANSI standard, even if insufficient to establish that Easter was negligent per se, nevertheless is evidence that Easter was negligent.

The trial judge did not evaluate these contentions separately. However, in that part of his judgment labeled "Conclusions of Law," he found: "[a]t all pertinent times [Easter] acted in a prudent and reasonable manner"; "[t]here was no negligence on the part of any Avondale employee or any other person for whom Avondale can be held legally responsible"; and "[t]he sole proximate cause of the accident was the action of the foreman, Macalusa, in directing Melerine to guide the crane line around the platform by using his hands, instead of using a tagline." We first discuss Melerine's contention that the trial judge was in error because Easter violated the OSHA regulations and ANSI standard and that this alleged violation constituted negligence per se.

■ OSHA was adopted "to assure . . . safe and healthful working conditions." 29 U.S.C. § 651(b). The Secretary of Labor enforces its requirements by citations for violations of the safety and health standards promulgated by him under the Act's authority and by assessing fines for these violations. The Occupational Safety and Health Review Commission ("OSHRC") reviews challenges to these enforcement ac-

tions.[6] The Act was designed to achieve compliance through these prescribed compliance procedures. *B & B Insulation, Inc. v. OSHRC*, 583 F.2d 1364, 1371 (5th Cir. 1978). It provides, therefore, that it neither enlarges nor diminishes "common law or statutory rights, duties, or liabilities." 29 U.S.C. § 653(b)(4). This means that neither its express provisions nor the regulations adopted pursuant to its authority create a civil cause of action against either a plaintiff's employer or a third party who is not the plaintiff's employer. *Barrera v. E.I. duPont de Nemours & Co.*, 653 F.2d 915, 920 (5th Cir. 1981); *Jeter v. St. Regis Paper Co.*, 507 F.2d 973, 976–77 (5th Cir. 1975) (collecting and discussing cases), *noted in B & B Insulation, Inc. v. OSHRC*, 583 F.2d at 1371 n.11.[7]

■ Melerine does not, therefore, contend that the OSHA regulations create a civil cause of action against Avondale. He urges instead that their violation establishes Avondale's negligence per se in a cause of action given him by general maritime law. *See Lowe v. General Motors Corp.*, 624 F.2d 1373, 1379–81 (5th Cir. 1980).[8] To establish that a defendant's violation of a statute or regulation is negligence per se, a plaintiff must prove "th[e] violation of a statute which is intended to protect the class of persons to which the plaintiff belongs against the risk of the type of harm which has in fact occurred." *Marshall v.*

---

**6.** *See generally Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 445–47, 97 S.Ct. 1261, 1264–65, 51 L.Ed.2d 464, 468–470 (1977); *Brennan v. Gilles & Cotting, Inc.*, 504 F.2d 1255, 1259–60 (4th Cir. 1974); W. Malone, M. Plant & J. Little, Workers' Compensation and Employment Rights 666–70 (2d ed. 1980).

**7.** *Accord, Dravo Corp. v. OSHRC*, 613 F.2d 1227, 1230 n.2 (3d Cir. 1980) (dictum); *Byrd v. Fieldcrest Mills, Inc.*, 496 F.2d 1323 (4th Cir. 1974) (per curiam); *Russell v. Bartley*, 494 F.2d 334 (6th Cir. 1974) (per curiam); *Nat'l Marine Serv., Inc. v. Gulf Oil Co.*, 433 F.Supp. 913, 919 (E.D.La.1977), *aff'd mem.*, 608 F.2d 522 (5th Cir. 1979); *Buhler v. Marriott Hotels, Inc.*, 390 F.Supp. 999 (E.D.La.1974); *Otto v. Specialties, Inc.*, 386 F.Supp. 1240, 1243 (N.D.Miss.1974); *Federal Employees for Non-Smokers' Rights (FENSR) v. United States*, 446 F.Supp. 181, 183 (D.D.C.1978), *aff'd mem.*, 598 F.2d 310 (D.C.

Cir.), *cert. denied*, 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979); *Knight v. Burns, Kirkley & Williams Constr. Co.*, 331 So.2d 651, 654 (Ala.1976); *Arvas v. Feather's Jewelers*, 92 N.M. 89, 91–92, 582 P.2d 1302, 1304–05 (Ct.App. 1978); *Stinnett v. Buchele*, 598 S.W.2d 469, 471 (Ky.App.1980); *Kelley v. Howard S. Wright Constr. Co.*, 90 Wash.2d 323, 334, 582 P.2d 500, 507 (1978); W. Malone, M. Plant & J. Little, *supra* note 6, at 670.

**8.** *Accord, Frederick L. v. Thomas*, 578 F.2d 513, 517 & n.8 (3d Cir. 1978); *Daggett v. Keshner*, 284 A.D. 733, 735–39, 134 N.Y.S.2d 524, 527–30 (1954); 2 F. Harper & F. James, The Law of Torts § 17.6, at 994–95, 1001 (1956). *See generally* Note, *Implying Civil Remedies from Federal Regulatory Statutes*, 77 Harv.L.Rev. 285 (1963).

*Isthmian Lines, Inc.*, 334 F.2d 131, 134 (5th Cir. 1964).[9] If the plaintiff thus establishes the defendant's negligence, he must then prove that the violation of the statute or regulation was the proximate cause of his harm. *E.g., Arthur v. Flota Mercante*, 487 F.2d 561, 564 (5th Cir. 1973); *Canterbury v. Spence*, 464 F.2d 772, 790 & n.100 (D.C. Cir.) (collecting cases), *cert. denied*, 409 U.S. 1064, 98 S.Ct. 560, 34 L.Ed.2d 518 (1972); W. Prosser, *supra* note 9, § 36, at 200–01. The threshold issue, therefore, is whether Melerine was a member of the class that the OSHA regulations were intended to protect. To resolve this issue we must look at the basis for these regulations.

■ OSHA authorizes the Secretary of Labor to promulgate health and safety regulations for employees of employers "engaged in a business affecting commerce." 29 U.S.C. § 655. Under another statute, the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), the Secretary of Labor is empowered to promulgate health and safety regulations to protect specified maritime employees. 33 U.S.C. § 941(a). The two OSHA regulations at issue in this case were originally promulgated under the authority of the LHWCA and were later adopted by the Secretary of Labor as OSHA regulations pursuant to 29 U.S.C. § 655(a). *See Dravo Corp. v. OSHRC*, 613 F.2d at 1229–30; Brown & Root, Inc., 9 Occ. Safety & Health Cas. (BNA) 1407, 1408–09 (Rev. Comm'n 1981); 29 C.F.R. §§ 1910.1, .11, .13. But the Secretary adopted only the substantive safety and health provisions of the LHWCA regulations: he did not adopt that portion stating the scope of their coverage.[10] Brown & Root, Inc., 9 Occ. Safety & Health Cas. (BNA) at 1409.

Whether OSHA regulates only the obligation of the employer to provide safe work conditions for his employees or also states a standard of care due third persons has been the subject of "complex dispute."[11] Some courts have held that, given the language of OSHA's clauses on the duties of employers,[12] OSHA's broad statement of purpose,[13] and OSHA's generally broad language, OSHA regulations protect not only an employer's *own* employees, but *all* employees who may be harmed by the employer's violation of the regulations.[14] This court, how-

---

**9.** *Accord*, 2 F. Harper & F. James, *supra* note 8, § 17.6, at 997; W. Prosser, The Law of Torts § 36, at 192–97, 200; Restatement (Second) of Torts § 286 (1965); *cf.* the cases holding that, under the Jones Act, any violation of a statute or regulation that is a cause in fact of injury to a seaman is actionable. *Kernan v. American Dredging Co.*, 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958); *Reyes v. Vantage S.S. Co.*, 609 F.2d 140, 143 (5th Cir. 1980), *modifying on rehearing* 558 F.2d 238, 242–44 (5th Cir. 1977).

**10.** Whether LHWCA regulations govern only the care employers must provide for their own employees or state a standard of care applicable to other persons who enter the work area, we do not here consider. *See e.g., Arthur v. Flota Mercante*, 487 F.2d at 561, 564; *Grigsby v. Coastal Marine Serv., Inc.*, 412 F.2d 1011, 1033–37 (5th Cir. 1969), *cert. dismissed*, 396 U.S. 1033, 90 S.Ct. 612, 24 L.Ed.2d 531 (1970).

**11.** *Rabar v. E.I. duPont de Nemours & Co.*, 415 A.2d 499, 503 (Del.Super.1980).

**12.** 29 U.S.C. § 654, entitled "Duties of employers and employees," contains both a general and a specific duty clause for employers. The general duty clause requires that each employer "furnish to each of *his* employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to *his* employees." *Id.* § 654(a)(1) (italics added). The specific duty clause requires each employer to "comply with occupational safety and health standards promulgated under [OSHA]." *Id.* § 654(a)(2). One might argue, therefore, that § 654(a)(2), which lacks the limiting language—"his employees"—of § 654(a)(1), establishes for the benefit of all employees, not just an employer's own employees, a specific duty to comply with OSHA regulations. *See* Miller, *The Occupational Safety and Health Act of 1970 and the Law of Torts*, 38 Law & Contemp. Prob. 612, 636 n.138 (1974); *cf. King v. Avtech Aviation, Inc.*, 655 F.2d 77, 79 (5th Cir. 1981) (per curiam) (regulation prescribing specific conduct more likely to establish standard of care than regulation prescribing general conduct).

**13.** "[T]o assure ... *every* working man and woman ... safe and healthful working conditions ...." 29 U.S.C. § 651(b) (italics added).

**14.** *Beatty Equip. Leasing, Inc. v. Secretary of Labor*, 577 F.2d 534, 536–37 (9th Cir. 1978); *Marshall v. Knutson Constr. Co.*, 566 F.2d 596, 599–600 (8th Cir. 1977); *Brennan v. OSHRC*,

ever,[15] along with others,[16] has held that OSHA regulations protect only an employer's own employees.[17]

In *Southeast Contractors, Inc. v. Dunlop*, 512 F.2d 675 (5th Cir. 1975) (per curiam), we reversed a decision of the OSHRC and adopted the opinion of OSHRC Chairman Moran, who had dissented from the OSHRC's decision. In his dissent, Chairman Moran stated:

> The respondent is an employer for jurisdictional purposes as it regularly hires employees on a continuing basis. [*See* 29 U.S.C. § 652(5).] However, this does not necessarily mean that the respondent is in violation of 29 U.S.C. Sec. 654(a)(2) for every failure to comply with a safety standard which occurs within its worksite. For example, an employer cannot be held in violation of that subsection if *his* employees are not affected by noncompliance with a standard. Similarly, there can be no violation of the Act by a respondent for failure to comply with a standard which charges some other employer with the duty of implementing the standard.

1 Occ. Safety & Health Cas. (BNA) 1713, 1716 (Rev. Comm'n 1974) (citations omitted) (italics in original). In *Horn v. C.L. Osborn Contracting Co.*, 591 F.2d 318, 321 (5th Cir. 1979), *aff'g* 423 F.Supp. 801 (M.D.Ga.1976), we followed *Southeast Contractors* and Chairman Moran's dissent and affirmed the district court's conclusion that OSHA

> relates only to the obligations of an employer "to his employees" and does not extend to other persons .... No legislative history nor statutory provision has been cited by the Plaintiff to support the proposition that Congress intended to create a duty on behalf of the employer with respect to persons other than its own employees. Therefore, any duty imposed upon [defendant] by [a] contract [incorporating OSHA regulations by reference] related to those duties imposed by OSHA and the Regulations issued thereunder, and were duties which existed only between employer and employee.

423 F.Supp. at 808 (citation omitted). And in *Barrera v. E.I. duPont de Nemours & Co.*, we stated that OSHA creates duties "only between employers and *their* employees." 653 F.2d at 920 (italics added).

513 F.2d 1032, 1036–39 (2d Cir. 1975); *Kelley v. Howard S. Wright Constr. Co.*, 90 Wash.2d at 334–37, 582 P.2d at 507–08; *see Anning-Johnson Co. v. OSHRC*, 516 F.2d 1081, 1091 & n.21 (7th Cir. 1975) (dictum); *cf. Rabar v. E.I. duPont de Nemours & Co.*, 415 A.2d at 503–05 (state statute modeled on OSHA).

**15.** The difference between the position taken in this circuit on this issue and the position taken in other circuits is noted in W. Malone, M. Plant & J. Little, *supra* note 6, at 671.

**16.** *Brennan v. Gilles & Cotting, Inc.*, 504 F.2d at 1260–62; *Koll v. Manatt's Transp. Co.*, 253 N.W.2d 265, 269–70 (Iowa 1977). The *Brennan* court deferred to the judgment of the OSHRC. The OSHRC later changed its position and concluded that an employer could be cited for violations of OSHA regulations that endanger other employers' employees. *Grossman Steel & Aluminum Corp.*, 4 Occ. Safety & Health Cas. (BNA) 1185, 1188 (Rev. Comm'n 1976); *Anning-Johnson Co.*, 4 Occ. Safety & Health Cas. (BNA) 1193, 1199 (Rev. Comm'n 1976) (dictum). The Fourth Circuit has not since considered the continued vitality of *Brennan*.

**17.** This court's position also finds support in the purpose of the Act, and in the language of both the Act and its legislative history. For example, holding several employers responsible for one employee's health and safety could "cause confusion and disruption" and "prove to be counterproductive." *Anning-Johnson Co. v. OSHRC*, 516 F.2d at 1089; *accord, Taylor v. Moore-McCormack Lines, Inc.*, 621 F.2d 88, 90–91 (4th Cir. 1980). The subsection of OSHA dealing with variances from standards prescribed by OSHA regulations, 29 U.S.C. § 655(d), provides that an employer may be granted a variance if he demonstrates that his proposed alternative to a prescribed standard "will provide employment and places of employment which are as safe and healthful as those which would prevail if he complied with the standard" (italics added), thereby implying that OSHA regulations protect only an employer's own employees. And the legislative history of OSHA contains language that also supports this conclusion. *See* S.Rep.No.1282, 91st Cong., 2d Sess., *reprinted in* [1970] U.S. Code Cong. & Ad. News 5177, 5184 ("his employees"); *id.* at 5187 ("affected employees ... their employers"; "his responsibility ... his own employees"; "employees ... their own places of employment").

In this circuit, therefore, the class protected by OSHA regulations comprises only employers' own employees.[18] Furthermore, this interpretation of the scope of coverage of OSHA regulations also accords with the scope of coverage explicitly given to the specific OSHA regulations at issue in this case. The regulation that gives OSHA accreditation to these and other LHWCA regulations states: "Each employer shall protect the employment and places of employment of each of *his* employees engaged in ship repair or a related employment, by complying with the appropriate standards prescribed by [29 C.F.R. §§ 1915.1 to .111]." 29 C.F.R. § 1910.13(a) (italics added).

The coverage of the OSHA regulations applicable in this case is, therefore, different from the coverage of the LHWCA regulation applied in *Arthur v. Flota Mercante.* In *Arthur,* we construed an LHWCA regulation [19] in a way that broadly defined the protected class as all maritime workers, and not merely those in the employment of the regulated employer. Therefore, we found in a shipowner's violation of that regulation negligence per se as to a person who was not employed by the shipowner. 487 F.2d at 564. *Arthur's* injury had occurred not only before the Secretary adopted the LWHCA regulation as an OSHA regulation, but even before OSHA was enacted. Because the regulations contended to be applicable here were adopted pursuant to OSHA, and because these regulations control only the employer's duty to his employees, we conclude that *Arthur* is inapplicable to this case. *See Dravo Corp. v. OSHRC,* 613 F.2d

at 1232, 1233–34; *cf. Brown v. Mitsubishi Shintaku Ginko,* 550 F.2d 331, 333 (5th Cir. 1977) (liability of shipowner under LHWCA regulation in the light of restrictive amendment to LHWCA); *Gay v. Ocean Transp. & Trading, Ltd.,* 546 F.2d 1233, 1239 (5th Cir. 1977) (same); *Dravo Corp. v. OSHRC,* 613 F.2d at 1230 ("*[B]efore the [LHWCA] standards were adopted by OSHA,* a violation of the safety regulations constituted negligence per se in actions by injured longshoremen against shipowners.") (italics added) (citing *Arthur*).

The OSHA tag line regulation does not, therefore, define the duty owed by Avondale and Easter, its employee, to Melerine, the employee of another company. The trial judge correctly refused to use it to establish negligence per se. Instead he found that, although a person exercising due care would have directed Melerine to use a tag line, Technical's foreman, Macalusa, was the person responsible for failing to require Melerine to do so. Macalusa and Melerine selected the load, attached the crane's line to it, signaled Easter, and directed him where to place the load. Even if, as Melerine asserts in his brief, Macalusa and Melerine were unaware of the danger of their conduct, and Easter "was the only person participating in the lifting operation who had knowledge of the risk and danger involved," [20] the responsibility under OSHA for this danger and its consequences nevertheless remained with Technical. *See, e.g.,* Del-Mont Constr. Co., 9 Occ. Safety & Health Cas. (BNA) 1703, 1707 (Rev. Comm'n 1981).

---

**18.** In *American Petroleum Inst. v. Occupational Safety & Health Administration,* 581 F.2d 493 (5th Cir. 1978), *aff'd,* 448 U.S. 607, 100 S.Ct. 2844, 65 L.Ed.2d 1010 (1980) (plurality opinion), we used language contrary to our determination of the scope of coverage of OSHA regulations. We stated that OSHA authorized the Secretary of Labor to promulgate a benzene labeling regulation that imposed "[t]he duty on one employer to comply with OSHA standards for the benefit of employees of another employer," 581 F.2d at 493, and cited and discussed three cases that conflict, *see* text accompanying notes 11–17 *supra,* with the rule in this circuit on the permissible scope of coverage of OSHA regulations.

The *American Petroleum* panel, of course, could not have overruled *Southeast Contractors, e.g., Ford v. General Motors Corp.,* 656 F.2d 117, 120 (5th Cir. 1981), and in fact it pointed out that its statements on this labeling regulation were dicta, 581 F.2d at 508.

**19.** 29 C.F.R. § 1504.21(f) (now codified at 29 C.F.R. § 1918.21(f)).

**20.** Melerine impugns this assertion elsewhere in his brief when he says that "the inherent lack of safety in the lifting operation ... would strike most as mere common sense."

The regulation that requires the use of a qualified signalman is also an OSHA regulation, and does not define the duty owed by Avondale to other employers' employees. Moreover, as Melerine's expert witness acknowledged, Melerine's injury was caused by neither an improper signal nor miscomprehension of a signal. Even if this regulation were applicable, it would be useless to Melerine in his attempt to establish Avondale's negligence per se; for its violation was patently not the cause in fact nor, a fortiori, the proximate cause of Melerine's injury. *See* pp. 709, 710 *supra.*

 Finally, Melerine relies on an alleged violation of the ANSI standard that makes the crane operator responsible for operations under his direct control. Unlike many other ANSI standards, this one was never adopted as part of any OSHA regulation on ship repairing. *See* 29 C.F.R. § 1915.5. Thus it is not a "legislative enactment," W. Prosser, *supra* note 9, § 36, at 192, so it could not establish Avondale's negligence per se. *See Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178, 1180–81 (5th Cir. 1975); *Dorsey v. Yoder Co.*, 331 F.Supp. 753, 768 & n.2 (E.D.Pa.1971) (collecting cases), *aff'd mem.*, 474 F.2d 1339 (3d Cir. 1973).[21]

Having decided that Avondale was not negligent in law, we now deal with Melerine's second contention, that Avondale was negligent in fact. This contention must surmount the clearly-erroneous hurdle set by Fed.R.Civ.P. 52(a).

 Melerine contends that, as a matter of reasonable prudence, Easter should have appreciated Melerine's hazardous exposure and "closed down his crane." He bases this contention on the ground that both the lifting operation itself, which Melerine says was "inherently unsafe," and the OSHA regulations and ANSI standard discussed above[22] should have led Easter to appreciate the hazard to Melerine. The trial judge apparently concluded that, while Easter could see Melerine, no danger was apparent to Easter and the risk that resulted in injury was created by Melerine's own actions. The trial judge decided that "[a]t all pertinent times [Easter] acted in a prudent and reasonable manner." Although he listed this as a conclusion of law, a trial judge's determination of negligence is indeed a finding of fact.[23] Because we are unable to say that this finding was reached by misapprehension of the law or was clearly erroneous, we AFFIRM the judgment.

---

**21.** Even if the standard were a legislative enactment, its violation would not establish negligence in this case because it applies to crane operations "under direct control" of the crane operator. The trial judge found that the operation underway was under the supervision of Technical and that the specific act causing Melerine's injury, pulling on the cable to free the load, was his own. Easter had stopped the operation of the crane in response to Melerine's signal. *See* 2 F. Harper & F. James, *supra* note 8, § 17.6, at 1006–07 & n.42.

**22.** This use of the OSHA regulations and ANSI standard differs from their use to establish negligence per se: here, Melerine is using the regulations only as evidence of negligence, which the trier of fact "may accept or reject as it sees fit." W. Prosser, *supra* note 9, § 36, at 201. A plaintiff may properly offer a statute or regulation as evidence of a defendant's negligence even when that statute or regulation cannot be used to establish negligence per se. *See New Amsterdam Cas. Co. v. Novick Transfer Co.*, 274 F.2d 916, 923 (4th Cir. 1960) (Maryland law); *National Marine Serv., Inc. v. Gulf Oil Co.*, 433 F.Supp. at 919; W. Prosser, *supra* note 9, § 36, at 202; Restatement (Second) of Torts § 288B(2), Comment d (1965).

**23.** *See Stevens v. East-West Towing Co.*, 649 F.2d 1104, 1106 (5th Cir. 1981); *Kratzer v. Capital Marine Supply, Inc.*, 645 F.2d 477, 480 (5th Cir. 1981); *Florida E. Coast Ry. v. Revilo Corp.*, 637 F.2d 1060, 1067 (5th Cir. 1981); *Fisher v. The Agios Nicolaos V*, 628 F.2d 308, 311–12 & n.5 (5th Cir. 1980), *petition for cert. filed*, 49 U.S.L.W. 3841 (U.S. Apr. 28, 1981) (No. 80–1810); *Noritake Co. v. M/V Hellenic Champion*, 627 F.2d 724, 725, 727–28 (5th Cir. 1980).