Herman Michael SZMALEC, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–93–00194–CR.

Court of Appeals of Texas, Houston (14th Dist.).

July 11, 1996.

---

R.H. Beilstein, Richmond, Tom Moran, Houston, for appellants.

Rikki Burke Graber, Houston, for appellee.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION ON REMAND

LEE, Justice.

Appellant entered a plea of not guilty before a jury to the offense of murder. TEX. PENAL CODE ANN. 19.02 (Vernon 1994). He was convicted and the jury assessed punishment at imprisonment for 10 years, probated, and a $10,000 fine. On original submission, we affirmed the judgment of the trial court. *See Szmalec v. State*, No. 14-93-00194-CR, 1995 WL 529626 (Tex.App.—Houston [14th Dist.] September 7, 1995) (not designated for publication). Appellant filed a petition for discretionary review with the court of criminal appeals. His petition was granted and the court remanded the matter for us to consider whether appellant's trial counsel was deficient for failing to object to cross-examination by the prosecutor on appellant's post-arrest, pre-*Miranda* silence under the Texas Constitution. Once again, we affirm.

On June 9, 1991, appellant shot and killed Bruce Wackerle. At trial, he claimed that he acted in self-defense. He testified that Wackerle came by his house in the morning and asked to talk with him. Appellant talked with his girlfriend for a while and then went to see Wackerle at Wackerle's near-by house. Because Wackerle had threatened him on several occasions, he took a pistol with him. When he arrived, Wackerle was sawing boards with a power saw. After a short conversation, appellant testified that Wackerle attacked him with the saw and appellant responded by shooting him. Appellant further testified that he had no means of retreat and he was acting in self-defense.

In both of his points of error on remand, appellant contends that he did not receive effective assistance of counsel as required by the U.S. and Texas Constitutions. Where an appellant claims that he was denied effective assistance of counsel, we apply

the two-prong *Strickland*[1] test. An appellant seeking relief under *Strickland* must demonstrate: 1) counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms; and 2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome of the trial. *Miniel v. State*, 831 S.W.2d 310, 323 (Tex.Crim.App.), *cert. denied*, 506 U.S. 885, 113 S.Ct. 245, 121 L.Ed.2d 178 (1992). Both prongs of this test must be satisfied for appellant to prevail. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; *Bonilla v. State*, 740 S.W.2d 583, 586 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd).

■■■ Judicial scrutiny of counsel's performance must be highly deferential. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. An ineffectiveness claim cannot be demonstrated by isolating one portion of counsel's representation. *McFarland v. State*, 845 S.W.2d 824, 843 (Tex.Crim. App.), *cert. denied*, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). Therefore, in determining whether the *Strickland* test has been met, counsel's performance must be judged on the totality of the representation. *Strickland*, 466 U.S. at 696, 104 S.Ct. at 2069, 80 L.Ed.2d at 699. Furthermore, a claim of ineffective counsel can only be sustained if it is firmly grounded in the record. *Cacy v. State*, 901 S.W.2d 691 (Tex.App.—El Paso 1995, pet. ref'd).

To support his points of error, appellant urges that his trial counsel was ineffective for not objecting to the prosecutor improperly questioning him on his post-arrest silence. Appellant testified on direct examination that he asked Officer Tubbs to hold as evidence the saw that Wackerle allegedly used to attack him. Contrary to appellant's contention, earlier during the state's case-in-chief,

Officer Tubbs testified that appellant never made such a request. The prosecution attempted to impeach appellant's testimony as follows:

Q: Now, wouldn't you agree with me, sir, that if somebody was trying to kill you and you had to kill them in self-defense, that it would be reasonable to tell witnesses that came around that the person tried to kill you and you had to kill him first? Wouldn't that be the reasonable thing to do?

A: I don't know if you know what it's like in that situation.

Q: Sir?

A: I don't know if—

Q: Wouldn't it be?

A: No.

Q: You don't agree that that would be a reasonable thing to do?

A: No. I don't think you just go and start blabbing.

Q: You don't agree that would be a reasonable thing to do; correct?

A: The thing to do is—

[discussion between the court and counsel]

Q: Wouldn't you agree that that would be a reasonable thing to do?

A: What thing?

Q: To tell the first person when witnesses come around that he tried to kill me and I had to shoot him; I acted in self-dense?

A: No.

Q: Now, when you got back to your apartment you didn't called 911, did you?

A: No.

Q: You didn't ask [your girlfriend] to call 911, did you?

A: No.

Q: You didn't care whether Mr. Wackerle laid there and died or not, did you, Mr. Szmalec?

A: Yes, I did care.

Q: Now, you indicated that you told officer Tubbs about a saw.

1. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)

A: Yes, I did.

Q: Now, Officer Tubbs wasn't the only police officer that you came into contact with that day, was it?

A: No, it wasn't.

Q: In fact, you came into contact with Officer Williams who did the atomic absorption test on your hands; is that correct?

A: Yes, that's correct.

Q: And you didn't say anything to him about this guy coming at you with a saw, did you?

A: No, I didn't.

Q: You didn't say anything to Sergeant Anderson or Sergeant Ferguson about the guy coming at you with the saw, did you?

A: I don't recall any Anderson and Ferguson.

Q: When you were being transported downtown, you didn't say anything to that officer about the guy coming at you with a saw, did you?

A: No, I didn't.

Q: When you got downtown to the homicide division, you didn't say anything to any police officer about Mr. Wackerle coming at you with a saw, did you?

A: No, I didn't.

Q: Don't you believe—Wouldn't you agree with me, Mr. Szmalec, that it would be reasonable for someone in that situation to continually let it be known that they acted in self-defense? Wouldn't you agree with that, sir?

A: I had no one to talk to.

Appellant argues these questions were an impermissible comment on his post-arrest silence which should have been objected to by his trial counsel.

■ Once an accused is advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and invokes his right to remain silent, the Fifth Amendment to the U.S. Constitution prevents the state from impeaching him with his silence. *Cisneros v. State*, 692 S.W.2d 78, 84 (Tex.Crim.App.1985); *see also Doyle v. Ohio*,

426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). In his initial appeal to this court, quoting *Cisneros*, we stated that the Fifth Amendment "is not violated when a defendant, who testifies in his own defense, is impeached with his prior silence. Impeachment follows the defendant's own decision to cast aside his cloak of silence and advance the truth-finding function of the criminal trial." *See Cisneros*, 692 S.W.2d at 84. In *Cisneros*, the court of criminal appeals also noted that the:

> Supreme Court held in the absence of the sort affirmative assurances embodied in the Miranda warnings, a state does not violate due process of law by permitting cross-examination as to postarrest silence when a defendant chooses to take the stand. A state is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony.

*Id.* at 85 (citing *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982)).

■ The record in this case does not indicate when appellant was given his *Miranda* warnings. Thus, on original submission, we held that the prosecutor permissibly impeached appellant with his pre-*Miranda* silence because appellant had not been given his *Miranda* warnings triggering the federal protection against impeachment with post-arrest silence under *Weir*. *See Brooks v. State*, 822 S.W.2d 765, 767–68 (Tex.App.—Houston [1st Dist.] ), *rev'd on other grounds*, 854 S.W.2d 659 (Tex.Crim.App.1992) (applying *Cisneros* to post-arrest impeachment). However, after *Cisneros*, the court of criminal appeals held that the Texas Constitution provides additional protection to defendants, barring the use of post-arrest, pre*Miranda* silence. *See Sanchez v. State*, 707 S.W.2d 575 (Tex.Crim.App.1986). When a defendant is arrested, he has the right to remain silent and the right to not have that silence used against him regardless of when he is advised of his rights. *Sanchez*, 707 S.W.2d at 580. Relying on *Sanchez*, appellant asserts that his silence was impermissibly used against him during trial because he was impeached

with his post-arrest, pre-*Miranda* silence. We find, contrary to appellant's argument, that this case is not controlled by *Sanchez* because he opened the door to the prosecutor's cross-examination.

In *Sanchez,* the court of criminal appeals, quoting *Thompson. v. State,* 88 Tex.Crim. 29, 224 S.W. 892 (1920), stated:

> It will be noticed that this [evidence of silence following arrest] was not the offered testimony of a statement that appellant had made, *but it was proving the fact that he made no statement,* especially the statement with reference as to how the shooting occurred. We are of the opinion that the court was in error in requiring appellant to answer the question. *He was asked nothing, and said nothing about the matter to the sheriff. It was simply a question of silence. It is therefore unnecessary to discuss what might have been the attitude had he made a confession while under arrest and unwarned. That involves a different question.* Here we have the simple question presented that appellant may be impeached by failing to make a statement, and in keeping silent at the time of his arrest and while under arrest. We do not think this is permissible.

*Sanchez,* 707 S.W.2d at 581 (grammatical markings in original and emphasis added). Unlike the defendant in *Sanchez,* appellant was not silent throughout the process. According to his testimony, appellant told the investigating officer "to take the saw into evidence." During direct examination, appellant testified:

Q: Did you tell any of the police officers about the saw?

A: Yes, I did.

Q: Which one of the police officers did you tell about the saw?

A: Officer Tubbs.

Q: Which one was Officer Tubbs?

A: He was the officer that arrested me, came over to my apartment and took the gun.

Q: What did you tell Officer Tubbs?

A: I told him that—Well, he asked me if I had shot Bruce willingly or not and I kind of said, asked him what do you

mean by willingly. I mean, I didn't want to shoot him.

. . . .

Q: What else did you tell him?

A: I asked him to take the saw into evidence.

Q: What was his response to that?

A: He said that the investigators on the scene were professionals and they would take care of all of that.

Q: Were you interviewed by any of the other officers during that day?

A: No, I was not.

Appellant attempted to establish that the police ignored evidence that supported his theory of self-defense. By testifying on direct examination that he told the officer "to take the saw into evidence," appellant opened the door to cross-examination on this issue. *See Bell v. State,* 867 S.W.2d 958, 962 (Tex. App.—Waco 1994, no pet.) (holding that the defendant opened the door to impeachment on his post-arrest silence because he attempted to shore up his defensive strategy through questions about his post-arrest statements to police); *Buitureida v. State,* 684 S.W.2d 133, 142 (Tex.App.—Corpus Christi 1984, pet. ref'd) (holding that the defendant was improperly impeached with his post-arrest silence when he gave an exculpatory story for the first time at trial, but also noting that the defendant did not invite the impeachment); *see also Lum v. State,* 903 S.W.2d 365, 369 (Tex.App.—Texarkana 1995, pet. ref'd) (defendant's testimony that police would not let him tell his side of the story opened the door to prosecutor's questions on cross-examination concerning post-arrest silence); *Mowbray v. State,* 788 S.W.2d 658 (Tex.App.—Corpus Christi 1990, pet. ref'd), *cert. denied,* 498 U.S. 1101, 111 S.Ct. 999, 112 L.Ed.2d 1082 (1991) (when invited, a prosecutor may refer to an accused's failure to testify); *Zertuche v. State,* 774 S.W.2d 697 (Tex.App.—Corpus Christi 1989, pet. ref'd) (prosecutor's closing argument which refers to the defendant's failure to testify is permissible when it is invited by defense counsel's closing argument). Thus, there was no error in the prosecutor's cross-examination of appellant impeaching the ve-

racity of his exculpatory story presented at trial.

In order to satisfy the first prong of *Strickland,* appellant must demonstrate that counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms. Because the prosecutor's cross-examination on appellant's post-arrest silence was permissible, appellant's counsel was not deficient for failing to object. Appellant has failed to carry his burden of establishing the first prong of *Strickland.* Accordingly, we overrule his two points of error and affirm the judgment of the trial court.