

## In The
## Court of Appeals
## Sixth Appellate District of Texas at Texarkana

_____

### No. 06-07-00121-CR

_____

JARED HEATH GAINES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Sixth Judicial District Court
Lamar County, Texas
Trial Court No. 20988

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Jared Heath Gaines pled guilty to murder, admitting that, after an evening of drinking beer and whiskey with his brother Jeffery, Gaines stabbed his brother to death. Gaines' sole defensive strategy was to seek a reduced sentence by claiming, during the punishment phase of trial, that he acted under the influence of sudden passion arising out of an adequate cause. *See* TEX. PENAL CODE ANN. § 19.02(a) (Vernon 2003). The jury did not agree with his claim, and Gaines was sentenced to thirty years' imprisonment.

Gaines' sole claim on appeal is that his trial counsel was ineffective because he failed to object to the State's repeated references to Gaines' failure to say anything about sudden passion in his interviews with investigators. Gaines argues that those references were improper comments about his post-arrest silence in violation of his Fifth Amendment right to be free from compelled self-incrimination—and that his trial counsel was ineffective in not objecting to them. But, since Gaines chose not to exercise his right to remain silent post-arrest, we affirm the judgment of the trial court.

Jeffery's partially decomposed body was recovered from the crawl space under his parents' mobile home after eyewitness Zabrina Bowers, Gaines' girlfriend, spoke with authorities. To authorities, Bowers described the events she witnessed that evening. At the end of the evening of drinking, Gaines and his brother engaged in a heated fight, in which the brother "whooped" Gaines. After the fight, the brother called Bowers a "slut" and a "f__ing bitch and a whore" and threatened

2

to force Bowers to give him oral sex after Gaines went to sleep. The brother then proceeded to his parents' bedroom and "passed out." Having overheard the brother's words, Bowers became upset and started crying. Then, according to Gaines, a sudden passion overcame him. After Bowers told Gaines that the brother's words hurt her feelings, Gaines grabbed a steak knife, entered his parents' bedroom where Jeffery was sleeping, and stabbed him to death.

After Gaines was provided his *Miranda*[1] warnings, he willingly talked with Lamar County sheriff's investigator Joe David Tuttle. During the initial interview lasting approximately one and one-half hours, Gaines talked with Tuttle concerning the events surrounding Jeffery's death, starting by denying involvement but then providing much the same details as Bowers.

During cross-examination of Gaines' father, the State elicited testimony that Gaines had never mentioned sudden passion when discussing the crime during jailhouse visits. Later, while cross-examining Gaines, the State referred to the fact that Gaines did not mention sudden passion during custodial interviews in stating, "first time we heard this anger, uncontrollable anger, immediate influence of sudden passion, was right before trial started." Gaines contends his counsel was ineffective because he did not object to the prosecutor's comments and questions regarding Gaines' post-arrest silence concerning the subject of sudden passion.

Gaines bears the burden of proving, by a preponderance of the evidence, that counsel was ineffective. *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984). Any allegation of

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

ineffectiveness must be firmly founded in the record. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). To evaluate claims of ineffective assistance of counsel, we apply the two-pronged *Strickland* test handed down by the United States Supreme Court. *See Strickland v. Washington*, 466 U.S. 668 (1984). First, Gaines must show that counsel's performance fell below an objective standard of reasonableness when considering prevailing professional norms. *Id.* at 687–88. Second, Gaines must show that the deficient performance damaged his defense. *Id.* Failure to satisfy either prong of the *Strickland* test is fatal to the claim. *Jaubert v. State*, 74 S.W.3d 1, 9 (Tex. Crim. App. 2002).

We evaluate counsel's performance while taking into consideration the totality of representation and the particular circumstances of this case. *Thompson*, 9 S.W.3d at 813; *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim App. 2000). Therefore, we will not use hindsight to second guess counsel's trial strategy. *Hall v. State*, 161 S.W.3d 142, 152 (Tex. App.—Texarkana 2005, pet. ref'd).

Once an accused is advised of his or her *Miranda* rights, and invokes the right to remain silent, the Fifth Amendment to the United States Constitution prevents the State from using that silence to impeach him or her. *Szmalec v. State*, 927 S.W.2d 213, 216 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). The trial record indicates that, even after Gaines was given a *Miranda*

4

warning, he freely spoke with investigators and did not invoke his right to remain silent.[2] Thus, this record does not reveal the claimed error of counsel.

In addition to testifying on direct examination that he was angry and enraged at his brother, Gaines opened the door to the State's line of questioning when, in an attempt to strengthen his sudden passion defense, he testified that he told officers about the way his brother treated him and the fight they had. At that point, the State was entitled to question "the veracity of his exculpatory story presented at trial." *Id.* at 217–18 (citing *Bell v. State,* 867 S.W.2d 958, 962 (Tex. App.—Waco 1994, no pet.) (defendant opened door to impeachment on his post-arrest silence in attempting to strengthen defense through questions about his post-arrest statements to police).

The record does not reveal why trial counsel failed to object to the State's comments and questions regarding post-arrest silence. Accordingly, counsel's failure to object could have been a part of his trial strategy. *See Goodspeed*, 187 S.W.3d at 393–94. Several reasonable explanations appear. Since Gaines did not invoke his right to remain silent, the State did not violate his Fifth Amendment rights. Even if this right had been invoked, Gaines' post-arrest failure to mention sudden passion to officers was admissible because he testified about statements he made to them in his direct testimony for the purpose of establishing his exculpatory defense. Finally, the information the State sought to establish—that Gaines had not mentioned sudden passion before trial—had

---

[2]The fact that Gaines did not choose to remain silent distinguishes this case from *Hall v. State*, 161 S.W.3d 142 (Tex. App.—Texarkana 2005, pet. ref'd), and *Mendoza v. State*, 959 S.W.2d 321, 323 (Tex. App.—Waco 1997, pet. ref'd).

already been established through the testimony of Gaines' father. *See Dotson v. State*, 146 S.W.3d 285 (Tex. App.—Fort Worth 2004, pet. ref'd) (State's questions to defendant for failure to mention exculpatory defense during jailhouse conversations with nongovernmental entity did not violate accused's right to remain silent). Counsel's actions fell within the range of reasonable professional assistance.

Because we determine that Gaines' counsel acted reasonably, there is no need to address the second prong of the *Strickland* test which determines whether counsel's errors were so serious as to deprive Gaines of a fair trial.

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     July 30, 2008
Date Decided:      July 31, 2008

Do Not Publish