In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00121-CR


______________________________




JARED HEATH GAINES, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the Sixth Judicial District Court


 Lamar County, Texas


Trial Court No. 20988




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 Jared Heath Gaines pled guilty to murder, admitting that, after an evening of drinking beer
and whiskey with his brother Jeffery, Gaines stabbed his brother to death. Gaines' sole defensive
strategy was to seek a reduced sentence by claiming, during the punishment phase of trial, that he
acted under the influence of sudden passion arising out of an adequate cause. See Tex. Penal Code
Ann. § 19.02(a) (Vernon 2003). The jury did not agree with his claim, and Gaines was sentenced
to thirty years' imprisonment.

 Gaines' sole claim on appeal is that his trial counsel was ineffective because he failed to
object to the State's repeated references to Gaines' failure to say anything about sudden passion in
his interviews with investigators. Gaines argues that those references were improper comments
about his post-arrest silence in violation of his Fifth Amendment right to be free from compelled
self-incrimination--and that his trial counsel was ineffective in not objecting to them. But, since
Gaines chose not to exercise his right to remain silent post-arrest, we affirm the judgment of the trial
court.

 Jeffery's partially decomposed body was recovered from the crawl space under his parents'
mobile home after eyewitness Zabrina Bowers, Gaines' girlfriend, spoke with authorities. To
authorities, Bowers described the events she witnessed that evening. At the end of the evening of
drinking, Gaines and his brother engaged in a heated fight, in which the brother "whooped" Gaines.
After the fight, the brother called Bowers a "slut" and a "f__ing bitch and a whore" and threatened
to force Bowers to give him oral sex after Gaines went to sleep. The brother then proceeded to his
parents' bedroom and "passed out." Having overheard the brother's words, Bowers became upset and
started crying. Then, according to Gaines, a sudden passion overcame him. After Bowers told
Gaines that the brother's words hurt her feelings, Gaines grabbed a steak knife, entered his parents'
bedroom where Jeffery was sleeping, and stabbed him to death.

 After Gaines was provided his Miranda (1) warnings, he willingly talked with Lamar County
sheriff's investigator Joe David Tuttle. During the initial interview lasting approximately one and
one-half hours, Gaines talked with Tuttle concerning the events surrounding Jeffery's death, starting
by denying involvement but then providing much the same details as Bowers.

 During cross-examination of Gaines' father, the State elicited testimony that Gaines had never
mentioned sudden passion when discussing the crime during jailhouse visits. Later, while cross-examining Gaines, the State referred to the fact that Gaines did not mention sudden passion during
custodial interviews in stating, "first time we heard this anger, uncontrollable anger, immediate
influence of sudden passion, was right before trial started." Gaines contends his counsel was
ineffective because he did not object to the prosecutor's comments and questions regarding Gaines'
post-arrest silence concerning the subject of sudden passion.

 Gaines bears the burden of proving, by a preponderance of the evidence, that counsel was
ineffective. Cannon v. State, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984). Any allegation of
ineffectiveness must be firmly founded in the record. Goodspeed v. State, 187 S.W.3d 390, 392
(Tex. Crim. App. 2005); Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). To
evaluate claims of ineffective assistance of counsel, we apply the two-pronged Strickland test handed
down by the United States Supreme Court. See Strickland v. Washington, 466 U.S. 668 (1984).
First, Gaines must show that counsel's performance fell below an objective standard of
reasonableness when considering prevailing professional norms. Id. at 687-88. Second, Gaines
must show that the deficient performance damaged his defense. Id. Failure to satisfy either prong
of the Strickland test is fatal to the claim. Jaubert v. State, 74 S.W.3d 1, 9 (Tex. Crim. App. 2002).

 We evaluate counsel's performance while taking into consideration the totality of
representation and the particular circumstances of this case. Thompson, 9 S.W.3d at 813; Ex parte
Felton, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991). There is a strong presumption that counsel's
conduct fell within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689;
Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim App. 2000). Therefore, we will not use hindsight to
second guess counsel's trial strategy. Hall v. State, 161 S.W.3d 142, 152 (Tex. App.--Texarkana
2005, pet. ref'd). 

 Once an accused is advised of his or her Miranda rights, and invokes the right to remain
silent, the Fifth Amendment to the United States Constitution prevents the State from using that
silence to impeach him or her. Szmalec v. State, 927 S.W.2d 213, 216 (Tex. App.--Houston [14th
Dist.] 1996, pet. ref'd). The trial record indicates that, even after Gaines was given a Miranda
warning, he freely spoke with investigators and did not invoke his right to remain silent. (2) Thus, this
record does not reveal the claimed error of counsel.

 In addition to testifying on direct examination that he was angry and enraged at his brother,
Gaines opened the door to the State's line of questioning when, in an attempt to strengthen his
sudden passion defense, he testified that he told officers about the way his brother treated him and
the fight they had. At that point, the State was entitled to question "the veracity of his exculpatory
story presented at trial." Id. at 217-18 (citing Bell v. State, 867 S.W.2d 958, 962 (Tex. App.--Waco
1994, no pet.) (defendant opened door to impeachment on his post-arrest silence in attempting to
strengthen defense through questions about his post-arrest statements to police).

 The record does not reveal why trial counsel failed to object to the State's comments and
questions regarding post-arrest silence. Accordingly, counsel's failure to object could have been a
part of his trial strategy. See Goodspeed, 187 S.W.3d at 393-94. Several reasonable explanations
appear. Since Gaines did not invoke his right to remain silent, the State did not violate his Fifth
Amendment rights. Even if this right had been invoked, Gaines' post-arrest failure to mention
sudden passion to officers was admissible because he testified about statements he made to them in
his direct testimony for the purpose of establishing his exculpatory defense. Finally, the information
the State sought to establish--that Gaines had not mentioned sudden passion before trial--had
already been established through the testimony of Gaines' father. See Dotson v. State, 146 S.W.3d
285 (Tex. App.--Fort Worth 2004, pet. ref'd) (State's questions to defendant for failure to mention
exculpatory defense during jailhouse conversations with nongovernmental entity did not violate
accused's right to remain silent). Counsel's actions fell within the range of reasonable professional
assistance.

 Because we determine that Gaines' counsel acted reasonably, there is no need to address the
second prong of the Strickland test which determines whether counsel's errors were so serious as to
deprive Gaines of a fair trial.

 We affirm the trial court's judgment.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 30, 2008

Date Decided: July 31, 2008


Do Not Publish
1. Miranda v. Arizona, 384 U.S. 436 (1966). 
2. The fact that Gaines did not choose to remain silent distinguishes this case from Hall v.
State, 161 S.W.3d 142 (Tex. App.--Texarkana 2005, pet. ref'd), and Mendoza v. State, 959 S.W.2d
321, 323 (Tex. App.--Waco 1997, pet. ref'd).



mphasis added), and "[t]he floor of every workroom shall be maintained, so far as
practicable, in a dry condition." 29 C.F.R. 1910.141 (emphasis added). These OSHA regulations
obviously require an employer to exercise judgment and discretion when determining what measures
are possible and practicable to achieve the desirable goal of dry working conditions. They do not
establish a mandatory standard of conduct, but rather reflect a standard of care for which the duty
of compliance is conditioned on what is possible or practicable. In other words, the duty of
compliance is conditioned on what is reasonable. It therefore remains the province of the jury to
decide whether the employer's conduct was reasonable under the circumstances, and the negligence
per se doctrine does not apply. 

 Instructions three and four suffer from a similar flaw. Although these instructions are not
inconsistent with the regulations, the regulations also provide that "[t]he employer shall assess the
workplace to determine if hazards are present, or are likely to be present, which necessitate the use
of personal protective equipment." 29 C.F.R. 1910.132(d). Thus, an employer must exercise
judgment and discretion when attempting to provide adequate personal protective equipment to its
employees. It is therefore left to the jury to decide if the employer acted reasonably. 

 Instructions six and seven basically state that the tools that an employer requires a worker
to use must be safe. There is obviously no clearly-defined standard of conduct specified here. 
Determining what is or is not safe in these circumstances bears practically no difference from
determining what is or is not reasonable.

 We need not consider individually the remaining instructions and underlying regulations. 
Suffice it to say that they similarly do not adequately reflect the law and are incompatible with the
doctrine of negligence per se.

 In support of his argument that OSHA regulations may be used to establish negligence per
se when the plaintiff is an employee of the defendant, Maddox relies on two cases, Dixon v. Int'l
Harvester Co., 754 F.2d 573, 581 (5th Cir. 1985), and Melerine v. Avondale Shipyards, Inc., 659
F.2d 706, 710-12 (5th Cir. 1981). Dixon involved simple negligence and not negligence per se, and
thus is not on point. However, the court in Dixon did comment on its decision in Melerine. The
Dixon court stated: "In Melerine . . ., we held that OSHA regulations provide evidence of the
standard of care exacted of employers, and thus may only be used to establish negligence per se
when the plaintiff is an employee of the defendant." 754 F.2d at 581 (citing Melerine, 659 F.2d at
710-12). We consider this to be a misstatement of the Melerine case. 

 In Melerine, the plaintiff raised both negligence in law (or per se) and negligence in fact
arguments. 659 F.2d at 708. The only issue the court decided relating to whether OSHA regulations
could be the basis for a negligence per se claim was whether the plaintiff was a member of the class
that the applicable OSHA regulations were intended to protect. Because the plaintiff was not such
a class member, the defendant was not negligent in law. 659 F.2d at 712. The court in Melerine
took the negligence per se analysis no further. Nowhere in the Melerine opinion does the court state
that OSHA regulations may be used to establish negligence per se, nor will we infer it solely from
the fact that the court considered whether the plaintiff was a member of the class protected by the
statute. And Maddox cites to no other authority in support of his argument. 

 Negligence per se instructions were inappropriate in this case. Because the jury charge failed
to properly reflect the law, Supreme was denied its right to have the jury determine whether it was 





in fact negligent. The instructions were harmful and constitute reversible error. We reverse the
judgment of the trial court and remand the cause for a new trial.



 William J. Cornelius

 Chief Justice


Date Submitted: December 5, 2001

Date Decided: January 15, 2002


Publish
1. Supreme raised its objection to the jury charge both at trial and in its motion for new trial.