¶ 16 Judge KELLY Concurs in the Result.

Joseph KELLY and Jennifer Kelly, h/w, Appellants

v.

THACKRAY CRANE RENTAL, INC., Appellee

Joseph KELLY and Jennifer Kelly, h/w,

v.

THACKRAY CRANE RENTAL, INC., R.M. Shoemaker Company, L.F. Driscoll Company and Daniel Tabas t/a Stout Road Hotel Development, LLC., and Dy–Core of Pennsylvania, Inc., and Romani Industries, Inc., d/b/a Dox Planks of Northeastern Pennsylvania, and Mason Building Corp., Inc.

Appeal of: L.F. DRISCOLL COMPANY

Superior Court of Pennsylvania.

Argued Oct. 5, 2004.

Filed May 5, 2005.

Robert H. Nemeroff, Elkins Park, for Kelly.

Josh M. Greenbaum, Philadelphia, for Thackray Crane.

Warren Kampf, Philadelphia, for L.F. Driscoll.

Before: STEVENS, KLEIN, and KELLY, JJ.

OPINION BY STEVENS, J.:

¶ 1 This appeal arises from the January 9, 2003 order by the Court of Common Pleas of Philadelphia County granting the Motion for Summary Judgment filed by L.F. Driscoll, Inc. ("Driscoll") and dismissing claims presented against it by Joseph and Jennifer Kelly ("the Kellys"), the January 9, 2003 summary judgment order dismissing the cross-claim of Driscoll against Dy–Core of Pennsylvania, Inc. ("Dy–Core"), and the July 15, 2003 order granting the Motion for Summary Judgment filed by Thackray Crane Rental, Inc. ("Thackray") and dismissing claims presented against it by the Kellys. In their appeal, the Kellys argue that the trial court abused its discretion or committed an error in law when it: (1) precluded the Kellys' expert witness; (2) granted Thack-

ray's Motion for Summary Judgment; and (3) granted Driscoll's Motion for Summary Judgment. In its cross-appeal, Driscoll argues that the trial court erred in dismissing its indemnity claim against Dy–Core. We affirm.

¶ 2 The events upon which these appeals are based occurred on February 10, 1999, in Philadelphia. Dy–Core hired Joseph Kelly ("Mr.Kelly"), a member of Iron Worker's Local 401, to connect pre-cast concrete planks on a hotel construction project. Driscoll was the construction manager for the project; Dy–Core was a subcontractor who manufactured, delivered, and installed the pre-cast concrete planks. Mr. Kelly's responsibility was to help guide the planks in place on each floor.

¶ 3 Dy–Core rented a crane and a crane operator, Arthur Andrassay ("Mr.Andrassay"), from Thackray, and Dy–Core supplied its own patented metal clamps as rigging devices. On the ground, the clamps were attached to each end of the plank by gripping grooves on each side of the plank, and the clamps were also attached to spreader cables that were attached to the crane. As the plank was raised by the crane, the clamps tightened and gripped the grooves. The workers successfully used the Dy–Core planks and clamps on each floor prior to February 10th.

¶ 4 On February 10th, Mr. Kelly was working on the seventh floor of the project and was helping to guide a plank into place when he noticed that a metal rod was interfering with the setting of the plank. A Driscoll employee signaled to Mr. Andrassay to move the plank away from Mr. Kelly. As Mr. Andrassay did so, Mr. Kelly bent over to reposition the rod and clear a path for the plank when the plank broke free of a clamp on the opposite side of the plank from Mr. Kelly. The plank re-

mained attached to the clamp closest to Mr. Kelly, and that end of the plank dropped down and struck him on his back, neck, and head at least twice. Mr. Kelly then jumped down to the sixth floor to avoid the plank from striking him again. Mr. Kelly suffered several injuries as a result of the impact from the plank and his fall.

¶ 5 The Kellys filed suit against Thackray, Dy–Core, and Driscoll, along with other defendants, for his injuries. Dy–Core and Driscoll filed separate Motions for Summary Judgment and argued that they were immune from the civil action based on the Pennsylvania Workers' Compensation Act ("The Act").[1] On January 9, 2003, the trial court granted Driscoll's and Dy–Core's Motions for Summary Judgment, dismissed the claims against Driscoll with prejudice, and dismissed the claims against Dy–Core while crossing out the words "with prejudice."[2] The Kellys filed an Application for a Determination of Finality, which the trial court denied.[3]

¶ 6 The suit against Thackray proceeded as scheduled. On March 17, 2003, Thackray filed, *inter alia,* a Motion in Limine to Preclude Plaintiff's Expert from Testifying at Trial. At issue was the Kellys' expert witness, Stephen Estrin ("Mr.Estrin"), who would testify about whether Thackray breached its standard of care. On July 10, 2003, the trial court denied Thackray's motion. The trial began on July 14, 2003, and after Mr. Kelly completed his testimony, the trial court stated that it revisited Thackray's motion and preliminarily concluded that "[Mr. Estrin's] report was incompetent as a matter of law to establish a duty and breach thereof." Trial Court Opinion, Filed 4/29/04, at 4. The trial court heard arguments from both parties, then vacated its prior order of denial and granted Thackray's motion to preclude Mr. Estrin's testimony. Thackray made an oral motion for summary judgment, and after hearing argument, the trial court granted Thackray's Motion for Summary Judgment and filed the order on July 15, 2003. These appeals followed.[4,5]

## A. THE KELLYS' EXPERT WITNESS

■ ¶ 7 We first address the Kellys' claim that the trial court abused its discretion and committed an error of law when it precluded Mr. Estrin from testifying as an expert witness for the trial. Trial courts enjoy a wide range of discretion in their rulings on the admission of expert testimo-

---

**1.** 77 P.S. § 52.

**2.** The trial court granted the motions on January 7, but the orders were entered on the docket on January 9.

**3.** The Kellys did not appeal the summary judgment in favor of Driscoll until August 7, 2003. However, the Kellys' claim against Defendant Thackray did not end until July 15, 2003. Because all claims and all parties were not disposed of until July 15, 2003, the Kellys timely appealed the summary judgment order for Driscoll. *See* Pa.R.A.P. 341(b) (stating that a final order occurs only when the order disposes of all claims and of all parties, when an order is expressly defined as a final order, or when the court makes a determination of finality).

**4.** The trial court issued Pa.R.A.P.1925(b) orders for the Kellys' appeals of the January 9 and July 15 orders. The Kellys timely filed their 1925(b) Statements of Matters Complained of on Appeal, and the trial court subsequently filed its 1925(a) opinions. The trial court did not issue a 1925(b) order for Driscoll's appeal of the January 9 order, and no 1925(a) opinion was filed. We do not find it necessary to remand to the trial court for a 1925(b) order because Driscoll addressed its issues on appeal adequately in its opposition to Dy–Core's Motion for Summary Judgment.

**5.** We note that the Kellys have made no averments of error as it relates to the entry of summary judgment in favor of Dy–Core.

ny, and we do not disturb their rulings unless there is a clear abuse of discretion. *Estate of Pew*, 409 Pa.Super. 417, 598 A.2d 65, 69 (1991). A finding of a trial court's abuse of discretion does not occur if we merely might have reached a different conclusion, but rather when the result is manifestly unreasonable, is based on partiality, prejudice, bias, or ill-will, or has such lack of support as to be clearly erroneous. *Paden v. Baker Concrete Construction, Inc.*, 540 Pa. 409, 412, 658 A.2d 341, 343 (1995).

■ ¶ 8 Pennsylvania Rules of Evidence 702 and 703 state the applicable standards for determining whether an expert witness will be allowed to testify. Rule 702 defines an "expert witness," and neither of the parties nor the trial court disputes Mr. Estrin's status as an expert. Rule 703 provides the relevant standard for the admissibility of expert testimony:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Pa.R.E. 703. The expert testimony must have an adequate basis in fact. *Kravinsky v. Glover*, 263 Pa.Super. 8, 396 A.2d 1349 (1979). If the testimony is expressed in a deficient manner, then it is considered incompetent. *Hussey v. May Department Stores, Inc.*, 238 Pa.Super. 431, 357 A.2d 635 (1976).

■ ¶ 9 The trial court found that Thackray and Mr. Andrassay were not in direct control of the "rigging and hoisting" part of the operation, and thus Mr. Estrin relied on an erroneous standard of care when he considered Thackray and Mr. Andrassay negligent under the applicable Occupational Safety and Health Act ("OSHA") and American National Standards Institute ("ANSI") standards. The Kellys argue that Thackray and Mr. Andrassay had direct control and that the trial court improperly substituted its view of the facts for those of the jury. We agree with the court.

¶ 10 The standards under consideration are 29 C.F.R. § 1926.550(b)(2) and ANSI B.30.5–3.1.2(d)–1968. The OSHA standard states in pertinent part: "(2) All crawler, truck, or locomotive cranes in use shall meet the applicable requirements for design, inspection, construction, testing, maintenance and operation as prescribed in the ANSI B30.5–1968, Safety Code for Crawler, Locomotive and Truck Cranes." The ANSI standard states: "The operator shall be responsible for those operations under his direct control. Whenever there is any doubt as to safety, the operator shall have the authority to stop and refuse to handle loads until safety has been assured." ANSI B.30.5–3.1.2(d)–1968.

¶ 11 At issue is the term "direct control" in the ANSI regulation. The trial court found that Thackray and Mr. Andrassay did not have direct control over the operation because Dy–Core made the choice for the rigging mechanism, Dy–Core furnished the mechanism, Driscoll approved the rigging mechanism, Dy–Core employees attached the mechanism to the planks, Dy–Core employees removed the clamps, and Dy–Core employees acted as signalmen to Mr. Andrassay, who operated the crane. As a result, the trial court found that the OSHA and ANSI standards were not applicable to Mr. Andrassay in regards to his role in the direct "rigging and hoisting" operation and determined that Mr. Estrin's opinion was not based on adequate factual testimony. The Kellys, however, argue that because rigging devices are integral to the operation of a crane, the

OSHA and ANSI standards should apply to Thackray and Mr. Andrassay as crane operators.

¶ 12 We have found a single case which addressed the issue of the ANSI "direct control" standard. In *Melerine v. Avondale Shipyards, Inc.,* 659 F.2d 706 (5th Cir.1981),[6] the plaintiff was injured when he fell after he tried to grasp a cable line and pull a load free. *Melerine,* 659 F.2d at 708. The plaintiff alleged that the crane operator violated the ANSI standard. *Id.* at 713. In a footnote, the United States Court of Appeals for the Fifth Circuit found:

> [The] violation would not establish negligence in this case because it applies to crane operations "under direct control" of the crane operator. The trial judge found that the operation underway was under the supervision of [a separate contractor] and that the specific act causing Melerine's injury, pulling on the cable to free the load, was his own.

*Id.* at 713 n. 21.

¶ 13 We find the Fifth Circuit's logic persuasive in the within case. The specific act of "rigging and hoisting" was directly undertaken by Dy–Core, and such was supervised by Dy–Core and Driscoll. Moreover, the specific act that caused Mr. Kelly's injury was the failure of the rigging mechanism supplied and approved by Dy–Core. Mr. Estrin's reliance upon ANSI B30.5–1968 for his expert testimony was erroneous, and he did not rely on an adequate basis in fact. Therefore, we find that the trial court did not abuse its discretion in precluding Mr. Estrin's testimony.

¶ 14 The Kellys further argue that the jury should have determined whether Mr. Andrassay exercised direct control over the rigging operation. We disagree. Trial courts have sound discretion to admit or preclude expert testimony. *Hussey, supra.* The trial court must decide whether the testimony relies upon an adequate basis of fact. *Kravinsky, supra.* In the within case, the dispute did not center around a particular fact, but rather in the interpretation of the ANSI regulation. The issue, then, is whether Thackray and Mr. Andrassay owed a duty to Mr. Kelly under the ANSI regulation. However, as the Kellys themselves argue, the existence of a duty is a question of law for the trial court to decide. *Sharpe v. St. Luke's Hospital,* 573 Pa. 90, 821 A.2d 1215 (2003). Therefore, in order to determine the relevance of Mr. Estrin's testimony, it was for the trial court to decide whether Thackray and Mr. Andrassay owed a duty to Mr. Kelly under the ANSI standard. Only if the trial court found such a duty existed would Mr. Estrin's testimony be relevant for a jury to decide whether Thackray and Mr. Andrassay breached that duty. As a result, the trial court was well within its province in determining whether Mr. Estrin's use of the OSHA and ANSI standards were an adequate basis of fact upon which he could rely for his expert testimony.

## B. THE KELLYS' CLAIM AGAINST THACKRAY

¶ 15 The Kellys argue that the trial court abused its discretion and committed an error of law when it granted summary judgment in favor of Thackray. The Kellys' argument is based upon their contention that the trial court improperly precluded their expert witness from testifying at trial. As stated *supra,* we have already determined that the trial court did not

---

**6.** While we are not bound by Fifth Circuit court decisions, as is discussed *infra* we find the reasoning in *Melerine* to be persuasive.

abuse its discretion in precluding their expert witness from testifying.

¶ 16 This Court does not act as a fact-finder when reviewing a summary judgment appeal; instead, we view the record in a light most favorable to the non-moving party, in this case, the Kellys. *Pappas v. Asbel,* 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001). The standards for summary judgment are clear:

> First, the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, must demonstrate that there exists no genuine, triable issue of fact. Second, the record must show that the moving party is entitled to judgment as a matter of law. The court must examine the record in the light most favorable to the non-moving party, resolving all doubts against the moving party.... After thoroughly examining the record, the trial court must determine whether there is a genuine issue of material fact.

*White v. Owens–Corning Fiberglas, Corp.,* 447 Pa.Super. 5, 668 A.2d 136, 142 (1995) (quoting *Stidham v. Millvale Sportsmen's Club,* 421 Pa.Super. 548, 618 A.2d 945, 950 (1992) (citations omitted)). If no genuine, triable issue of fact exists and the moving party is entitled to judgment as a matter of law, then the court may enter summary judgment in favor of the moving party. *Smitley v. Holiday Rambler Corp.,* 707 A.2d 520 (Pa.Super.1998). In the within case, the Kellys relied on Mr. Estrin's testimony to establish Thackray's standard of care and causation. The Kellys offer no other evidence to establish Thackray's standard of care or causation, and a thorough examination of the record reveals no such evidence. We further find no genuine, triable issue of fact. Therefore, we find that the trial court properly granted summary judgment in favor of Thackray.

## C. THE KELLYS' CLAIM AGAINST DRISCOLL

¶ 17 The Kellys argue that the trial court abused its discretion and committed an error of law when it granted Driscoll's Motion for Summary Judgment because Driscoll was not Mr. Kelly's statutory employer on the date of the accident. The Kellys make two arguments to support their claim: (1) Driscoll did not satisfy the elements of *McDonald v. Levinson Steel Co.,* 302 Pa. 287, 153 A. 424 (1930); and (2) Driscoll did not purchase and maintain workers' compensation insurance for Mr. Kelly. We disagree with both arguments.

### 1. The *McDonald* Test Elements

¶ 18 We first address the Kellys' argument that Driscoll did not qualify as a statutory employer under *McDonald.* In *McDonald,* the Supreme Court of Pennsylvania established the test for determining whether a party qualifies as a statutory employer under Section 203 of the Workers' Compensation Act. According to the *McDonald* Court, a party must establish the following elements to qualify as a statutory employer:

> (1) An employer who is under contract with an owner or one in the position of an owner. (2) Premises occupied by or under the control of such employer. (3) A subcontract made by such employer. (4) Part of the employer's regular business intrusted [sic] to such subcontractor. (5) An employee of such subcontractor.

*McDonald,* 302 Pa. at 294–95, 153 A. at 426. The Kellys allege that Driscoll failed to satisfy the first two prongs of the test.

### a. Driscoll's Contract with Tabas

¶ 19 The Kellys assert that Driscoll did not satisfy the first prong because the contract was not made with the owner of the project or with one in the position of

an owner. The Kellys base their argument on the fact that Driscoll's contract identified the owner as "Daniel M. Tabas or his nominee," while the deed of record identified "Daniel M. Tabas and Evelyn R. Tabas, his wife," as the owners. According to the Kellys, because ownership of property by an individual is legally distinct from ownership by husband and wife, Driscoll cannot have contracted with an owner or one in the position of an owner by contracting with "Daniel M. Tabas or his nominee."

¶ 20 Our examination of the record reveals that Daniel and Evelyn Tabas owned the property as joint tenants with the right of survivorship.[7] We find no caselaw or statute that forbids a joint tenant from contracting individually to make improvements on the property. In fact, a joint tenant may make improvements without the co-tenant's consent, but he may not compel reimbursement from the co-tenant in such a situation. *Appeal of Kelsey*, 113 Pa. 119, 125, 5 A. 447, 449 (1886); *Crest v. Jack*, 3 Watts 238 (Pa.1834). Nor do we find any caselaw which suggests that a contract made with an individual joint tenant, without a co-tenant's consent, fails to satisfy the first requirement of the *McDonald* test. An examination of *McDonald* and its progeny reveals a clear standard that the employer must be "under contract with *an* owner or one in the position of *an* owner." *McDonald*, 302 Pa. at 295, 153 A. at 426 (emphasis added). We find it unnecessary to restrict the *McDonald* test by requiring employers to contract with every tenant listed on a deed in order to perform work on the property. We therefore conclude that Driscoll satis-

fied the first element of the *McDonald* test.

**b. Occupancy or Control**

¶ 21 The Kellys argue that Driscoll did not actually occupy or control the premises. The second prong of the *McDonald* test requires that the "[p]remises [be] occupied by *or* under the control of such employer." *McDonald, supra* (emphasis added). An employer's occupancy or control must be actual, but need not be exclusive. *Emery v. Leavesly McCollum*, 725 A.2d 807, 811 (Pa.Super.1999). An employer satisfies the second prong by proving either occupancy or control and is not required to prove both. *Id.* Therefore, we need only to find actual occupancy or actual control by Driscoll in order to determine that Driscoll satisfied the second prong.

¶ 22 We find that Driscoll exhibited actual occupancy of the site and satisfied the second prong. The Kellys argue that, when determining whether an employer qualifies under the second prong, this Court consistently engages in an analysis of contractual duties exercised by a contractor to determine actual control instead of simply determining whether the contractor exhibited actual occupancy. The Kellys also argue that the legislature did not intend for contractors to qualify for statutory employer status merely by their presence on the site. The Kellys, in effect, argue that the "or" in the second prong actually acts as a conjunctive "and." However, this Court has found that the legislature intended the disjunctive "or" and that *either* occupancy or control satisfies the second prong. *See, e.g., Dougherty v. Conduit & Foundation Corp.*, 449 Pa.Super.

---

7. The Kellys' brief states that Daniel Tabas "owned the property with his wife as tenants by the entireties." Kellys' Brief at 34. However, the deed in the record indicates that Daniel Tabas conveyed the property as a joint tenancy with the right of survivorship to himself and his wife.

405, 674 A.2d 262, 266 (1996) ("Courts read the language in prong two in a strictly disjunctive manner."); *Zizza v. Dresher Mechanical Contractors, Inc.*, 358 Pa.Super. 600, 518 A.2d 302, 304 (1986) ("[I]t is not necessary that [the defendant] establish that it both occupied and controlled the ... site."); *Davis v. City of Philadelphia*, 153 Pa.Super. 645, 35 A.2d 77, 80 (1943) ("We find no reason to conclude that the legislature intended 'or' to be used other than in its ordinary disjunctive sense.").

¶ 23 The Kellys argue that this Court has not employed any specific definition of "occupying the premises," and thus our examination should focus exclusively on actual control. We decline their invitation. Although we have not specifically defined "occupying the premises," we have previously determined that an employer satisfied the second prong by examining only the occupancy requirement. *See Zizza, supra.* This Court has not specifically defined occupancy in relation to the *McDonald* test; however, the United States District Court for the Eastern District found that an employer effectively occupied the premises when its supervisor was present at the site on a daily basis and when its employees were regularly present on the premises at the same time as the subcontractor's employees. *Al–Ameen v. Atlantic Roofing Corp.*, 151 F.Supp.2d 604, 607 (E.D.Pa.2001).

¶ 24 We find the District Court's reasoning persuasive in the within case. Driscoll had a project manager, secretary, and project superintendent on the site daily. Driscoll maintained a job trailer at the project site, and Driscoll employees were regularly present simultaneously with Dy–Core employees. *See id.* (requiring not that the general contractor's employees and subcontractor's employees actually work together, but only that they be present simultaneously). As a result, we find that Driscoll occupied the premises sufficiently to satisfy the second prong of the *McDonald* test.

¶ 25 The Kellys make no arguments that Driscoll failed to meet the third, fourth, or fifth prongs of the *McDonald* test. Our examination of the record and the trial court's opinion reveals that Driscoll satisfies those prongs. Therefore, we conclude that there was no genuine, triable issue of fact regarding whether Driscoll met all the requirements of the *McDonald* test.

## 2. Failure to Maintain Insurance

¶ 26 The Kellys argue that, even if Driscoll satisfies the elements of the *McDonald* test, Driscoll should not be awarded statutory employer status unless Driscoll can also prove that it maintained insurance for workers' compensation benefits. The Kellys' basic argument is that courts should add proof of the contractor's workers' compensation insurance as an additional step to the *McDonald* test. We disagree.[8]

---

8. We previously remanded to the trial court for the benefit of a supplemental Rule 1925(a) opinion on this issue. The trial court issued a supplemental opinion in which it found that the Kellys waived the issue because "[u]pon review of the Motion for Summary Judgment and Plaintiff's Response, Plaintiff at no point alleged a valid contract that protected L.F. Driscoll from paying worker's compensation." Trial Court Opinion, Filed 1/31/05 at 1. However, in their motion opposing summary judgment, the Kellys referred to a specific section of Driscoll's contract with Dy–Core in which Dy–Core was required to provide workers' compensation insurance. Kellys' Memorandum of Law *Contra* Driscoll's Motion for Summary Judgment at 12. Therefore, we do not consider the issue waived. However, we decline to remand for another 1925(a) opinion as it would be futile and there is sufficient evidence in the record to address the claim.

¶ 27 The Kellys contend that an employer in Driscoll's position should not be considered a statutory employer "in reserve status" unless that employer offers proof of workers' compensation insurance. According to the Kellys:

> If the injured employee's direct employer (subcontractor) does not have workmen's compensation insurance on the date of the accident and the putative statutory employer (general contractor) also does not have workmen's compensation insurance, an anomaly exists whereby the injured employee has the right to sue the statutory employer in tort for damages simultaneously with the statutory employer's right to claim immunity, having satisfied the five prong *McDonald* test.

Kellys' Reply Brief at 4. The Kellys are mistaken in their analysis of the *McDonald* test as applied to the current version of the Act.

¶ 28 The Kellys' argument seems to advance a belief that a *McDonald* employer forever enjoys full immunity in all cases. However, this belief belies the findings of the Supreme Court of Pennsylvania, which found that Section 302(b) of the Act "still provides that a statutory employer can be held liable for benefits under the Act in reserve status." *Fonner v. Shandon, Inc.*, 555 Pa. 370, 378, 724 A.2d 903, 907 (1999). In other words, the *McDonald* test establishes only whether a general contractor may be deemed a statutory employer for purposes of applying Section 302. A *McDonald* employer must continue to stand in reserve status, however, in the event that the subcontractor defaults on its obligations. *Id.*

¶ 29 The Kellys argue that because Driscoll did not offer proof that it maintained workers' compensation insurance, it was "impossible for Driscoll to actually stand in 'reserve status' as [Mr.]

Kelly's statutory employer." The Kellys are mistaken in their argument. As the *Fonner* Court explained, a general contractor qualifies as a statutory employer once it passes the *McDonald* test. *Id.* Then, once a contractor qualifies as a statutory employer, it is placed in "reserve status" once it reaches an agreement for the subcontractor to maintain workers' compensation insurance. *Id.* If the subcontractor does not maintain the necessary insurance, then the subcontractor is no longer protected by Section 302 of the Act. 77 P.S. § 462. Once the subcontractor defaults on its obligation to compensate the injured worker, then the contractor who was placed "in reserve" becomes potentially liable for benefits. *Fonner, supra* ("[T]he amended Section 302(b) still provides that a statutory employer can be held liable for benefits under the Act in reserve status."). If we adopted the Kellys' proffered standard, plaintiffs would be in the position of receiving workers' compensation benefits from subcontractors *and* advancing a legal tort claim against *McDonald* statutory employers. We cannot adopt such a standard.

¶ 30 In *Bartley v. Concrete Masonry Corp.*, 322 Pa.Super. 207, 469 A.2d 256 (1983), this Court found the following:

> It is uncontroverted that appellee, Carolin Masonry, the sub-contractor and decedent's employer, and Massaro entered into an agreement which provided that Carolin Masonry was to procure workmen's compensation insurance for its employees and hold harmless Massaro. Appellant would have us hold, essentially on public policy grounds, that because Carolin Masonry and not Massaro, was responsible for the payment of workmen's compensation benefits to the decedent, that Massaro ought not to be accorded statutory employer status. The same argument was advanced to us in

*Cranshaw Construction Inc. v. Ghrist*, 290 Pa.Super. 286, 434 A.2d 756 (1981), and we rejected it then as we do today. *Bartley*, 469 A.2d at 258. Furthermore, the Supreme Court of Pennsylvania has found that the amended version of Section 302(b) requires *direct* employers to provide workers' compensation coverage for its employees, which in turn does not preclude employers who otherwise satisfy the *McDonald* test from enjoying statutory employer immunity. *Fonner*, 555 Pa. at 377, 724 A.2d at 906. The *Fonner* Court thoroughly examined the 1974 amendments to the Act and pre-amendment case-law and found that "an agreement by a subcontractor to provide for compensation insurance does not remove the statutory employer from the protection of the Act, even though it may operate to relieve the statutory employer from directly paying compensation by placing that primary responsibility upon the subcontractor." *Id.* See also *Capozzoli v. Stone & Webster Engineering Corp.*, 352 Pa. 183, 42 A.2d 524 (1945); *Swartz v. Conradis*, 298 Pa. 343, 148 A. 529 (1929).

¶ 31 The *Fonner* and *Bartley* cases establish the relevant test for the case *sub judice*: (1) does Driscoll satisfy the traditional *McDonald* test elements; and (2) did Driscoll have an agreement with the subcontractor to provide for compensation insurance? *See Fonner, supra; Bartley, supra*. If Driscoll satisfies these two elements, then it is entitled to statutory employer immunity under the Act, but remains liable in reserve status should the subcontractor default on its obligations.

*Fonner*, 555 Pa. at 377, 724 A.2d at 906. This test is consistent with the Supreme Court's and this Court's holdings that *McDonald* employers are not required to maintain workers' compensation insurance when the subcontractor already does so. *See Fonner, supra; Bartley, supra*. *See also Emery*, 725 A.2d at 813. Therefore, the Kellys' argument, that Driscoll cannot be considered a statutory employer in reserve status because it did not maintain workers' compensation insurance, must fail.

¶ 32 We have already determined that Driscoll meets the first element and thus qualifies as a statutory employer. In regards to the second element, it is undisputed that Driscoll reached a contractual agreement with Dy–Core for Dy–Core to maintain workers' compensation insurance. The record discloses the agreement in the contract, and the Kellys themselves cite the agreement to advance their argument. Therefore, Driscoll is considered a statutory employer who is liable only in reserve status.[9] *See Fonner, supra; Bartley, supra*.

¶ 33 The Kellys have not averred that Dy–Core defaulted on its obligation to compensate them at any point in their appeal to this Court. In fact, the Kellys admit that Dy–Core maintained insurance for Mr. Kelly on the day in question. Kellys' Supplemental Brief at 2 ("[Mr.] Kelly was insured by Dy–Core for work-related injuries on the day of his accident, but not by L.F. Driscoll."). We therefore affirm the trial court's summary judgment order

---

**9.** The Kellys further argue that Driscoll "stands in the enviable position of denying coverage to an injured worker because he was not an employee covered under its policy, while simultaneously enjoying the protected status as a statutory employer." Kellys' Supplemental Brief at 3. However, by requiring Dy–Core to provide workers' compensation insurance for its employees, Driscoll has fulfilled its obligation to ensure that an injury to Mr. Kelly would be covered by insurance. Even by fulfilling that obligation, Driscoll merely stands in reserve for liability if Dy–Core does not properly compensate the Kellys, and Driscoll does not yet enjoy full immunity.

pertaining to the Kellys' claim against Driscoll.

## D. DRISCOLL'S CROSS–CLAIM AGAINST DY–CORE

¶ 34 Driscoll argues that the trial court erred in dismissing Dy–Core from the action pursuant to Dy–Core's Motion for Summary Judgment because Driscoll had a cross-claim pending against Dy–Core based on a claim of contract indemnity.[10] Driscoll claims that it spent a considerable amount of money in defending its action until the order of dismissal and that it also raises the claim of indemnity in the event that this Court reinstates the Kellys' claims against it. Driscoll seeks a determination that the indemnity clause in its contract is enforceable and a remand to the trial court to determine whether Driscoll is entitled to recovery from Dy–Core. Dy–Core argues that Driscoll has no standing to bring this appeal because Driscoll is not an aggrieved party.

¶ 35 At issue is the following provision in the contract between Driscoll and Dy–Core:

INDEMNITY

To the fullest extent permitted by law, the subcontractor hereby agrees to indemnify and hold harmless the Contractor ... (hereinafter collectively referred to as "the Indemnitees") from and against any and all claims ... costs, expense, proceedings, attorney's fees ... of any kind which the Indemnitees ... may incur ... by reason of (1) the injury to and/or the death of any person ... caused or alleged to have been caused in whole or in part by any act or omission of the Subcontractor or any of its subcontractors ... arising out of or relating to the performance of this Subcontract; or (2) the failure of the Subcontractor to perform, or to perform properly, its obligations under this Subcontract. Without limiting the generality of the foregoing, this Indemnity shall be deemed to cover claims by employees of the Subcontractor or its subcontractors.

Our preliminary inquiry is whether the clause clearly exhibits the "intent to indemnify against claims by employees of the alleged indemnitor." *Bester v. Essex Crane Rental Corp.*, 422 Pa.Super. 178, 619 A.2d 304, 307 (1993). Our reading of the agreement shows that it clearly does.

¶ 36 Dy–Core also alleges that Driscoll did not suffer "direct and immediate harm" in the context of its claim because the claim has never been litigated on its merits and the trial court dismissed Driscoll's claim against Dy–Core without prejudice.[11] Dy–Core argues that Driscoll is therefore free to pursue a later cause of

**10.** We note that Driscoll's appeal did not enter the docket until August 27, 2003. The trial court entered its dispositive motion on the docket on July 25, 2003, and the first Notice of Appeal was filed by the Kellys on August 7, 2003. According to Pa.R.A.P. 903, Driscoll was required to file its Notice of Appeal by August 24, 2003. *See* Pa.R.A.P. 903(b) (requiring an appellant to file a cross-appeal either thirty days after judgment or fourteen days after the first notice of appeal, whichever occurs later). However, an examination of the record reveals that Driscoll filed its Notice of Appeal on August 14, 2003, but did not pay the filing fees until August 27, 2003. We therefore do not find Driscoll's cross-appeal to be untimely. *See First Union National Bank v. F.A. Realty Investors Corp.*, 812 A.2d 719, 722–23 (Pa.Super.2002) (finding that perfection of appeal depends on the date of filing and not on payment of the filing fee).

**11.** The trial court did not expressly state "without prejudice." Rather, it crossed out the words "with prejudice" on its order. We interpret this action by the trial court to be proof of its intent to dismiss Driscoll's claim against Dy–Core without prejudice.

action against Dy–Core. Our inquiry is whether the trial court properly granted Dy–Core's Motion for Summary Judgment against Driscoll.

 ¶ 37 This Court has established previously that a party may assert a claim for counsel fees and expenses once that party establishes an underlying right to indemnification. *McClure v. Deerland Corp.*, 401 Pa.Super. 226, 585 A.2d 19, 22 (1991). A party may establish an underlying right to indemnification once the facts to support a claim for indemnity have been established. *Martinique Shoes, Inc. v. New York Progressive Wood Heel Co.*, 207 Pa.Super. 404, 217 A.2d 781, 782 (1966). In the within case, Driscoll asserted its claim against Dy–Core before all the facts relevant for an indemnity case were established. Driscoll, therefore, did not present all of the relevant facts necessary for the trial court to make a determination regarding indemnity because the Kellys' claims against Driscoll were still pending. In effect, Driscoll was asserting a claim for equity instead of damages. *See McClure, supra* (stating that cause of action for indemnity must be remedy for damages rather than equity). Driscoll is not prevented, however, from presenting a more thorough claim for *damages* after all issues relevant to a claim of indemnity have been resolved. Therefore, we do not find it necessary to reverse the trial court's grant of summary judgment to Dy–Core.

¶ 38 With regards to Driscoll's precautionary indemnity claim, we have no reason to address it because we determine that the Kellys' claims shall not be reinstated.

## CONCLUSION

¶ 39 We find that the trial court properly granted Thackray's motion *in limine* against the Kellys' expert witness and Thackray's motion for summary judgment.

We further find that the trial court properly determined that Driscoll was a statutory employer under the *McDonald* test and that Driscoll was properly considered a statutory employer in reserve status in accord with Sections 203 and 302 of the Act. Finally, we affirm the trial court's order dismissing Driscoll's indemnity claim against Dy–Core.

¶ 40 Affirmed.