# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark Edie, :
        Appellant :
         :
        v. :
         :
George Junior Republic in : No. 546 C.D. 2025
Pennsylvania : Argued: March 3, 2026


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE STACY WALLACE, Judge

OPINION BY
JUDGE COVEY                         FILED:  March 27, 2026

      Mark Edie (Appellant) appeals from the Mercer County Common Pleas Court's (trial court) January 16, 2025 order granting George Junior Republic in Pennsylvania's (Appellee) Motion for Summary Judgment (Motion) and dismissing Appellant's Complaint in Civil Action (Complaint) with prejudice. Appellant presents one issue for this Court's review: whether the trial court abused its discretion or erred as a matter of law by granting Appellee's Motion on the basis that Appellee was immune from Appellant's negligence action as a statutory employer under the Workers' Compensation Act (Act).[1] After review, this Court affirms.

      Appellee operates a youth residential institution located at 233 George Junior Road, Grove City, Mercer County, Pennsylvania (Premises).[2] Appellee entered into a Food Service Management Company Request for Proposal and Cost Reimbursable Contract (Contract) with Metz Culinary Management (Metz), a third-

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

[2] Appellee provides residential care for delinquent and dependent youth who may or may not have a mental health diagnosis. A school on the campus for the youth is operated under the auspices of Grove City School District (School District) and is staffed by the School District's employees. Appellee provides food services for the youth in residence.

party culinary management company, to provide food service at the Premises. *See* Reproduced Record at 84-105.[3] Metz employed Appellant as a member of the food service staff at the Premises. On May 14, 2021, while Appellant was cleaning a flat-top grill in the central kitchen on the Premises (Kitchen), the grill fell on Appellant's left arm, causing him to fall to the ground and sustain injuries.

On November 10, 2022, Appellant filed the Complaint in the trial court seeking damages from Appellee, alleging that the grill was attached improperly and unsecured; Appellee knew or should have known of a dangerous, hazardous, unsafe, and/or defective condition in the Kitchen; Appellee failed to take steps necessary to eliminate the hazard, reduce its danger to invitees, or otherwise warn users of the dangerous, hazardous, unsafe, and/or defective condition; and Appellant's injuries were the direct result of Appellee's negligence. *See* R.R. at 1-7. On December 12, 2022, Appellee filed an Answer and New Matter to the Complaint, therein raising the defense that Appellee was immune from Appellant's negligence action under the Act as a statutory employer.[4] *See* R.R. at 8-19. On or about December 21, 2022, Appellant filed a Reply to New Matter, wherein he denied the averments in Appellee's New Matter as legal conclusions to which no responses were required. *See* R.R. at 20-24. Following discovery, on November 22, 2024, Appellee filed the Motion, claiming that it qualified for immunity under the Act as a statutory employer. *See* R.R. at 25-128. On December 12, 2024, Appellant opposed the Motion. *See* R.R. at 129-236. The trial court heard oral argument on the Motion on

---

[3] In the Reproduced Record, Appellant did not number the pages with a small "a" as required by Pennsylvania Rule of Appellate Procedure 2173. *See* Pa.R.A.P. 2173 (providing "the pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures . . . : thus 1, 2, 3, etc., followed . . . by a small a, thus la, 2a, 3a, etc.[]"). This Court's references to the page numbers herein are consistent with Appellant's Reproduced Record.

[4] Appellee also asserted that it was immune from Appellant's negligence action under what is commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. §§ 8541-8542.

January 6, 2025.  That same day, Appellee filed a reply in support of its Motion.  *See* R.R. at 237-257.  On January 16, 2025, the trial court granted the Motion in Appellee's favor on the basis that Appellee was a statutory employer under the Act[5] and dismissed Appellant's Complaint with prejudice.  *See* R.R. at 258-264.

On February 7, 2025, Appellant appealed to the Pennsylvania Superior Court (Superior Court).  By February 12, 2025 order, the trial court directed Appellant to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b), which he did on February 24, 2025.  *See* R.R. at 276-281.  On March 11, 2025, the trial court issued its opinion pursuant to Rule 1925(a), in which it merely adopted its January 16, 2025 opinion and order.  *See* R.R. at 284.  By April 25, 2025 order, the Superior Court transferred the appeal to this Court.[6]

Initially,

> "[g]ranting of summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  [*Albright v. Abington Mem'l Hosp.*, 696 A.2d 1159, 1165 (Pa. 1997)] (internal quotation marks omitted.)  Moreover, "[t]he record is to be viewed in the light most favorable to the nonmoving party, and all doubts as to the presence of a genuine issue of material fact must be resolved against the moving party."  *Id*.

---

[5] In light of its holding, the trial court did not further address whether Appellee was immune under the Tort Claims Act.  *See* Appellant Br. App. A, Trial Ct. Op., at 6.

[6] "In reviewing a grant or denial of summary judgment, this Court may only disturb the order of the trial court where there has been an error of law or a clear or manifest abuse of discretion."  *Ladley v. Pa. State Educ. Ass'n*, 269 A.3d 680, 686 n.6 (Pa. Cmwlth. 2022).  Nevertheless, this Court's review of a trial court order granting summary judgment is *de novo*, and its scope of review is plenary.  *See Z&R Cab, LLC v. Phila. Parking Auth.*, 335 A.3d 1275 (Pa. Cmwlth. 2025), *appeal denied* (Pa. No. 179 EAL 2025, filed Nov. 4, 2025).

*Ladley v. Pa. State Educ. Ass'n*, 269 A.3d 680, 686 n.6 (Pa. Cmwlth. 2022). Pennsylvania Rule of Civil Procedure 1035.2 provides that "[a] proper grant of summary judgment depends upon an evidentiary record that either[:] (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury. Pa.R.C.P. 1035.2 *Note*." *McCarthy v. Dan Lepore & Sons Co., Inc.*, 724 A.2d 938, 940 (Pa. Super. 1998).[7]

Relevant here, Section 303(a) of the Act provides that an employer's liability under the Act "shall be exclusive and in place of any and all other liability to such employes . . . on account of any injury . . . ." 77 P.S. § 481(a). Section 203 of the Act adds:

> **An employer who permits the entry upon premises** occupied by him or **under his control of a laborer** or an assistant **hired by a**n employe or **contractor**, **for the performance upon such premises of a part of the employer's regular business entrusted to such** employe or **contractor**, **shall be liable to such laborer** or assistant in the same manner and **to the same extent as to his own employe**.

77 P.S. § 52 (emphasis added). Accordingly, a statutory employer may not be sued for negligence.

However,

> [t]he [Pennsylvania] Supreme Court [(Supreme Court)] construed [] [S]ection [203] of the Act decades ago in *McDonald v. Levinson Steel Co.*, . . . 153 A. 424 ([Pa.] 1930), and imposed five elements that must be established

---

[7] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

4

before statutory employer immunity exists.[8]   These elements are as follows:

> 1. An employer who is under contract with an owner or one in the position of an owner;
>
> 2. Premises occupied by or under the control of such employer;
>
> 3. A subcontract made by such employer;
>
> 4. Part of the employer's regular business entrusted to such subcontractor;
>
> 5. An employee of such subcontractor.
>
> *Id.*, . . . 153 A. at 426 . . . .

*Peck v. Del. Cnty. Bd. of Prison Inspectors*, 765 A.2d 1190, 1192 (Pa. Cmwlth. 2001) (emphasis omitted), *aff'd*, 814 A.2d 185 (Pa. 2002); *see also Yoder v. McCarthy Constr., Inc.*, 345 A.3d 668 (Pa. 2025).  "In determining whether a party is a statutory employer, courts should construe the elements of the *McDonald* test strictly and find statutory employer status only when the facts clearly warrant it."  *Peck*, 814 A.2d at 189.

> Where, as here, a party moves for summary judgment based on a "statutory employer" defense, and relies on a contractual obligation to sustain that status, it has the burden of proving that there was a contract, that its regular business consists of the work that is the subject of the contract, and that it entrusted part of its regular business to the subcontractor employer of the injured employee. *Cranshaw Constr*[.]*, Inc. v. Ghrist*, . . . 434 A.2d 756, 762 ([Pa. Super.] 1981).  The statutory employer defense is a legal fiction . . . created to assist the Pennsylvania worker by assuring coverage for that worker under the [Act].

*Peck*, 765 A.2d at 1192.

---

[8] The *McDonald* test does not apply to Section 302(a) of the Act, 77 P.S. § 461, which makes certain contractors secondarily liable for compensating injured workers employed by their subcontractors outside the context of construction.  *See Six L's Packing Co. v. Workers' Comp. Appeal Bd. (Williamson)*, 44 A.3d 1148 (Pa. 2012).

Here, Appellant argues that the trial court abused its discretion or erred as a matter of law by incorrectly concluding that Appellee established it was immune from Appellant's negligence action as a statutory employer under the Act. Specifically, Appellant contends that the trial court improperly determined that Appellee satisfied the second prong of the test the Supreme Court set forth in *McDonald* - that the alleged statutory employer occupy or control the premises.[9] Appellant asserts that, when viewed in the light most favorable to him, the record evidence demonstrates that Appellee did not exercise the level of continuous on-site presence necessary to establish occupancy under relevant case law. Thus, Appellant claims there is an issue of material fact as to whether Appellee occupied or controlled the premises.

Regarding the second *McDonald's* factor, the Superior Court has declared: "An employer's occupancy or control must be actual, but need not be exclusive. An employer satisfies the second prong by proving either occupancy **or** control and is not required to prove both." *Kelly v. Thackray Crane Rental, Inc.*, 874 A.2d 649, 656 (Pa. Super. 2005) (citation omitted; emphasis added). "Therefore, [this Court] need only to find actual occupancy or actual control by [Appellee] in order to determine that [Appellee] satisfied the second prong." *Id*.

The parties do not dispute the following facts. George Junior Republic Realty (GJRR), a Pennsylvania non-profit corporation, owns the real estate and Premises on which the Kitchen is located. GJRR leased the Premises, along with related fixtures and equipment, to Appellee from October 2004 to September 2033 "for the operation of a purely public charity providing residential treatment and related services to dependent and delinquent children and youths and their families,

---

[9] The trial court observed that Appellant "concede[d] that [Appellee] ha[d] satisfied the *McDonald* test except for the second prong." Appellant's Br. App. A, Trial Ct. Op., at 5. Appellant "d[id] not contest any of the other *McDonald* factors[.]" *Id*. at 6.

and the conduct of other lawful activities related thereto." *See* Motion Ex. D (Lease) at 2 (R.R. at 76).  In or around 2018, Appellee and Metz executed the Contract under which Metz would prepare and provide meals from the Kitchen to Appellee's residents on Appellee's behalf.[10]  *See* R.R. at 89, 92, 109-110, 222.  The Contract mandated that Appellee would, at no charge, make the Kitchen available to Metz.  *See* R.R. at 95.  In June 2020, Metz hired Appellant as a cook in the Kitchen.  *See* R.R. at 57-60, 175, 179.  Appellant alleged in the Complaint that he was injured in the Kitchen on May 14, 2021.[11]  *See* R.R. at 3-4, 26-27.

Although Appellant alleged in the Complaint that Appellee "owns, operates, possesses, controls, manages, and/or maintains . . . [the Premises,]" R.R. at 3, relative to the Motion, he asserts that Appellee failed to establish the requisite occupation or control under *McDonald* because it did not establish that an Appellee employee and/or supervisor maintained a continuous, daily physical presence in the Kitchen and/or directly supervised Metz's employees.  *See* R.R. at 145-148.  Appellant claims that *Uzho v. Top Gun Construction, Inc.*, 253 A.3d 261 (Pa. Super.

_____

[10] Section 7.C of the Contract in the record provides, in pertinent part: "Renewal contracts cannot be effective prior to the final approval dates by [Division of Food and Nutrition (]DFN[)] and signed by both parties."  R.R. at 91.  The subject Contract was fully signed on May 7, 2021, but was not effective until July 1, 2021, which was *after* Appellant's May 14, 2021 work injury.  *See* R.R. at 104-105.  Although it is likely a renewal, the Contract in the record before this Court does not cover the date on which Appellant was injured.  Appellant did not challenge the Contract.  In fact, in opposing the Motion, Appellant admitted to the applicability of the Contract, s*ee* Motion ¶¶ 17-18 (R.R. at 29), Opposing Answer ¶¶ 17-18 (R.R. at 132-133), and even attached it to his brief opposing the Motion and relied heavily upon it.  *See* Opposing Br. at 5-7 (R.R. at 146-148), Ex. 1 (R.R. at 152-171); *see also* Trial Ct. Op. at 5.  In the absence of Appellant's objection and in light of his and the trial court's reliance on the Contract in the record, this Court will review it.  *See* Pa.R.E 301(a)(1); *see also Keffer v. Bob Nolan's Auto Serv., Inc.*, 59 A.3d 621, 645 (Pa. Super. 2012) (This Court "will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected.").

[11] The parties also agree that Metz paid Appellant workers' compensation benefits on account of his work injury.  *See* R.R. at 67-70, 122-125, 146, 177-178, 204.  However, case law makes clear that assumption of workers' compensation liability does not alone establish control under *McDonald*.  *See Kelly*; *see also* R.R. at 146.

2021), *Braun v. Target Corp.*, 983 A.2d 752 (Pa. Super. 2009), *Kelly*, and *Emery v. Leavesly McCollum*, 725 A.2d 807 (Pa. Super. 1999), support his position.

Here, Metz's General Manager, Paula Lanciotti (Lanciotti), explained, and Appellant confirmed, that Metz prepared the food in the Kitchen daily and Appellee delivered it to the youth in their residential homes around the Premises. *See* R.R. at 175, 195, 197. She explained that Appellee was responsible for supplying and maintaining the Kitchen equipment, and Metz reported issues to Appellee's then-Food Service Director, Jarrod Gault (Gault). *See* R.R. at 177, 182, 223. Lanciotti recalled that Gault was at the Premises "on a daily basis[,]" R.R. at 177, and "frequent[ed] the [K]itchen a couple times throughout the day[,]" R.R. at 183; in fact, Gault was at the Premises when Appellant's accident occurred. *See* R.R. at 177; *see also* R.R. at 176.

Gault described his role as Appellee's Food Service Director, when Appellant sustained his injury, as follows:

> My main responsibility [wa]s that we participate[d] with the Pennsylvania Department of Education [(PDE)] in the National School Breakfast and Lunch Program, so it's, kind of, oversight of that program, along with oversight of Metz.
>
> Because in the unique situation, we contract[ed] out all the cooking services in our [K]itchen. They make the meals.[12]
>
> So I go up there on a daily basis, make sure people show up to work, and everything is going well, and make sure

---

[12] Gault also represented that Appellee purchases, owns, and maintains the [K]itchen equipment Metz uses, and Metz must report equipment issues or needs to Appellee. *See* R.R. at 224, 229-230. When asked: "Do you know if employees of [Appellee] were responsible for inspecting [K]itchen equipment for safety," Gault stated: "[O]n a monthly basis, the maintenance department do[es] . . . [p]reventative [m]aintenance [c]hecks." R.R. at 227.

8

they follow the menus, and I do menu planning with the [general manager (]GM[)] and things like that.

R.R. at 223; *see also* R.R. at 229. When asked, "so, you're in the [K]itchen on a daily basis?" Gault responded: "Yes, sir." R.R. at 223.

Gault expounded:

So part of what the [PDE] requires is that we have oversight of [Metz].

So to prove that, I show up there on a daily basis, have conversations, make sure what they are preparing matches the menu we've all created.

. . . .

I talk to [Lanciotti], who is [Metz's] GM, there, who has oversight over all of the Metz staff members about, you know, everything is going well, thing[s] are working properly, food is coming in, make sure we don't have supply chain issues, things of that nature.

We have to work hand in hand, because we create the food in that building, but then transport it out of that building into all of the various units and cottages we have on our campus.

So we have to make sure time frames are meeting -- that food is getting out at the proper time, and everything that is supposed to be sent is getting sent.

R.R. at 223-224. Gault recalled that he was on the Premises when Appellant's injury occurred and he arrived in the Kitchen a few minutes after he received a call about the incident. *See* R.R. at 224-225.

In granting Appellee's Motion, the trial court reasoned:

[Appellee] has [its] food service director stop daily to check with Metz'[s] supervisor and do maintenance checks. Deposition of [] Lanciotti, pages 18 [(R.R. at 177)], 41[-]42, 44 [(R.R. at 183)]; Deposition of [] Gault, pages 18-20 [(R.R. at 223)]. Furthermore, [Appellee] ensures that Metz'[s] employees are showing up to work, ensures there are no supply-chain issues, that Metz is

9

> following the menu, and . . . is sending food out on time. Deposition of [] Gault, pages 19-21 [(R.R. at 223-224)]. [Appellee's] employees are in the [K]itchen daily to pick up food. *See* Deposition of [Appellant], pages 34, 41 [(R.R. at 195, 197)]. [Appellee] has a director on the premises daily. Pursuant to *Kelly* . . . , this [trial c]ourt finds [Appellee] occupies the [P]remises.
>
> [Appellant's] arguments concern managing the employees of Metz, which does not speak to occupying or controlling the premises.

Trial Ct. Op. at 6.

This Court observes, in addition to the testimony on which the trial court relied,[13] Section 4 of the Lease states, in pertinent part: "[Appellee] shall use **and occupy** the Premises for the operation of a purely public charity providing residential treatment and related services to dependent and delinquent children and youths and their families, and the conduct of other lawful activities related thereto." R.R. at 76 (emphasis added). Section 13 of the Lease specifies that no entity other than Appellee may occupy the Premises without GJRR's consent. *See* R.R. at 78. Contract Section 1.H makes Appellee legally responsible for supervising Metz's

---

[13] This Court is aware that

> [o]ral testimony alone, either through testimonial affidavits or depositions, of the moving party or the moving party's witnesses, even if uncontradicted, is generally insufficient to establish the absence of a genuine issue of material fact. *See Nanty-Glo v. Am*[.] *Surety Co.*, 163 A. 523 (Pa. 1932); *Penn C*[tr.] *House, Inc. v. Hoffman*, 553 A.2d 900 (Pa. 1989).

Pa.R.Civ.P. 1035.2, *Note*. Here, although the trial court appears to have relied solely on Appellee's uncontradicted witness testimony to conclude that there was no genuine issue of material fact, *see Nanty-Glo*, because Appellant did not object to the Motion or the trial court's order on that basis, he waived that argument. *See Krentz v. Consol. Rail Corp.*, 910 A.2d 20 (Pa. 2006). Moreover, "[w]hether genuine issues of material fact exist is a question of law, and 'therefore, on that question [this Court's] standard of review is *de novo.* This means [that this Court] need not defer to the determinations made by the [trial court].'" *N.N. v. Sch. Dist. of Phila.*, 349 A.3d 1081, 1087-88 (Pa. Cmwlth. 2025) (quoting *Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899, 902-03 (Pa. 2007) (citation omitted)). Rather, this Court may review the record and determine whether a genuine issue of material fact exists. *See N.N.*

food service on the Premises. *See* R.R. at 86. Contract Sections 6.C and G, 8.A, 9.B, 11.G and N, 12.A, and 14.O require Appellee to ensure Metz's compliance with federal and state requirements regarding: professional food service standards; donated food storage, use, and management; and meal preparation and quality, based on on-site visits, monitoring, and audits of Metz's operation in the Kitchen. *See* R.R. at 90-96.

In addition, Appellant declared in his Complaint that Appellee "owns, **operates**, **possesses**, controls, **manages**, and/or **maintains** . . . [the Premises,]" including the Kitchen. R.R. at 3 (emphasis added); *see also* R.R. at 4. Appellant's testimony[14] also confirmed that after he prepared the food at the Kitchen **every day**, **Appellee's drivers** picked it up and delivered it to the units and cottages on the Premises to be served to Appellee's residents. *See* R.R. at 197, 200. Although Appellant claimed that he was only mildly familiar with Appellee's drivers (and their supervisors) and **Appellee's maintenance staff**, particularly due to COVID-19 protocols, he acknowledged that they **were in the Kitchen**. *See* R.R. at 195, 201.

Viewing the evidence in the light most favorable to Appellant, and resolving all doubts as to the presence of a genuine issue of material fact against Appellee as this Court must, *see Ladley*, this Court concludes that the trial court did not err or abuse its discretion by concluding that Appellee sufficiently occupied the Kitchen to satisfy the second *McDonald* test factor and, thus, was immune from Appellant's negligence action as a statutory employer under the Act. Nothing in

---

[14] "Oral testimony that constitutes an adverse admission by a non-moving party does not fall within th[e *Nanty-Glo*] rule." *Off. of Att'y Gen. ex rel. Corbett v. Richmond Twp.*, 2 A.3d 678, 681 (Pa. Cmwlth. 2020).

*Uzho*, *Braun*, *Kelly*, or *Emery* requires a different result based on the facts presented here.[15]  Accordingly, the trial court's order is affirmed.


_____
ANNE E. COVEY, Judge

Judge Fizzano Cannon did not participate in the decision in this matter.

---

[15] In *Uzho*, an unreported and non-precedential opinion, the Superior Court upheld the common pleas court's order granting summary judgment in a contractor's favor as a statutory employer because the contractor satisfied *McDonald's* occupancy requirement where the contractor had a trailer on the premises and a project manager who oversaw the worksite.  *See id*. In *Braun*, the Superior Court affirmed the common pleas court's grant of compulsory non-suit in favor of a contractor, ruling that the contractor satisfied *McDonald's* occupancy requirement, where the contractor maintained a trailer at the premises, was on site every day, and was easy to locate when necessary.  *See id*.  In *Kelly*, the Superior Court affirmed the common pleas court's grant of summary judgment on the basis of statutory employer status, where the construction manager satisfied *McDonald's* occupancy requirement by having employees on site daily, maintaining a job trailer there, and its employees were regularly present simultaneously with the subcontractor's employees.  *See id*.  In *Emery*, the Superior Court upheld the common pleas court's grant of summary judgment in favor of a general contractor as a statutory employer under *McDonald*, where the general contractor occupied the property during construction, coordinated the subcontractors' work, and controlled the premises.  *See id*.  Where, as here, Appellee's supervisor and other employees were in the Kitchen simultaneously with Metz's staff every day, they clearly occupied the Kitchen.  Thus, this Court's ruling is consistent with *Uzho*, *Braun*, *Kelly*, and *Emery*.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark Edie,                                     :
                 Appellant            :
                                           :

          v.                                :

George Junior Republic in                      :    No. 546 C.D. 2025
Pennsylvania                                   :

## O R D E R

       AND NOW, this 27th day of March, 2026, the Mercer County Common Pleas Court's January 16, 2025 order is affirmed.

                             _____

                             ANNE E. COVEY, Judge